IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROY H. BRAY, Individually and     §
On Behalf of All Others Similarly Situated,    §
                        §
     Plaintiff,             §        Civil Action No. 09-cv-00663
                        §               (Jury)
VS.                    §
                        §
THE CADLE COMPANY,      §
DANIEL C. CADLE,         §
RAY DIAMOND, and        §
WINDSEARCH, INC.,        §
                        §
     Defendants.        §

## SECOND AMENDED COMPLAINT FOR CLASS ACTION DECLARATORY AND INJUNCTIVE RELIEF, AND INDIVIDUAL DAMAGES JURY TRIAL DEMAND

Plaintiff ROY H. BRAY, by and through his attorneys, brings this Second Amended Complaint on behalf of himself and all others similarly situated, against The Cadle Company ("**Cadle Co.**"), Daniel C. Cadle, and Ray Diamond (collectively, "**Cadle**" or "**Defendants**"). Plaintiff complains and alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.     This is an action for declaratory and injunctive relief relating to Cadle's violations of the Social Security Act, 42 U.S.C. § 407(a), and Defendants' violation of Plaintiff's right to privacy. This is also an action for damages against Defendants for the Cadle defendants' violation of the federal Fair Debt Collection Practices Act ("**FDCPA**"), the Texas Debt Collection Act (the "**DCA**") and the Texas Deceptive Trade Practices-Consumer Protection Act ("**DTPA**"), the Cadle defendants' abuse of process and

1

unreasonable collection efforts, and for each defendant's assistance, encouragement and participation in the other's conduct.

2.      Plaintiff is a consumer because the debt at issue was a personal loan for personal purposes.  Plaintiff brings this action individually for his actual and punitive damages resulting from Cadle's abuse of process, and for injunctive relief and damages pursuant to the FDCPA, the DCA, and the DTPA.  Plaintiff brings this class action against (a) Cadle on behalf of all persons who reside in the State of Texas who have a judgment against him or her which is, or has been, owned by The Cadle Company since March 5, 2007, and (b) Cadle on behalf of all persons who reside in the State of Texas from whom The Cadle Company has attempted, since March 5, 2007, to collect an alleged consumer debt.

## JURISDICTION AND VENUE

3.      The federal claims asserted herein arise under and pursuant to the 42 U.S.C. § 407(a) and 15 U.S.C. § 1692.  The jurisdiction of the Court is founded on 28 U.S.C. § 1331 (federal question).  This court also has authority to provide declaratory and injunctive relief in this case under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  This Court also has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a) because the Plaintiff and the Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Notwithstanding the foregoing amount in controversy, 15 U.S.C. § 1692k states, in relevant part, that "[a]n action to enforce any liability created by [the Fair Debt Collection Practices Act] may be brought in any appropriate United States district court without regard to the amount in controversy . . ."

4.      This Court has specific and general jurisdiction over the Cadle defendants.  The Cadle defendants have continuous and systematic activity and contacts with the State of Texas; the Court's exercise of jurisdiction over the Cadle defendants and their property will not offend traditional notions of fair play and substantial justice.  Moreover, Plaintiff's claims herein arose from or are related to the Cadle defendants' contacts with the State of Texas.  Thus, the Cadle defendants have purposefully availed themselves of the privileges or laws of this state.  For jurisdiction facts, Plaintiff also relies on all other allegations made in this complaint.

5.      Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred there, and because a substantial part of the property at issue is situated there.  For venue facts, Plaintiff also relies on all other allegations made in this complaint.  Knowing that their actions could violate federal laws, including the Fair Debt Collection Practices Act, Defendants certainly must have known that it could be hailed into a federal court in Texas where the garnishment of the bank account was to occur.

## PLAINTIFF

6.      Plaintiff ROY BRAY ("**Plaintiff**" or "**Bray**") is an 85 year old individual who is a citizen of the State of Texas, and who resides in Houston, Harris County, Texas.

## DEFENDANTS

7.      Defendant, THE CADLE COMPANY, is a corporation that is incorporated under the laws of the State of Ohio.  Cadle Co. has its principal place of business in Ohio, and does business in the State of Texas but does not have a registered agent for service of process in the State of Texas.  Service of process on Cadle Co. may be made according to the laws of the State of Texas by serving the Texas Secretary of State, Hope Andrade, as its agent for service, at 1019 Brazos Street, Austin, Travis County, Texas 78701.  Cadle Co. may also be served with process according to the laws of the State of Ohio by serving its registered agent, Daniel C. Cadle, at 4363 La France St., Newton Falls, Ohio 44444, or at its home office at 100 North Center Street, Newton Falls, Ohio 44444.

8.      Defendant, DANIEL C. CADLE, is an individual who is a resident and citizen of the State of Ohio.  Mr. Cadle may be served with process according to the laws of the State of Ohio at 4363 La France St., Newton Falls, Ohio 44444, or at his home office at 100 North Center Street, Newton Falls, Ohio 44444.

9.      Defendant, RAY DIAMOND, is an individual who is a resident and citizen of the State of Ohio. Mr.  Diamond may be served with process at 4363 La France St., Newton Falls, Ohio 44444, or at his home office at 100 North Center Street, Newton Falls, Ohio 44444.

## FACTUAL BACKGROUND

10.      Cadle Co. is in the business of buying alleged debts in default, obtaining judgments, and then pursuing the alleged judgment debtors and their assets to collect on the judgments.   In the 1980s, Cadle Co. began purchasing loans (at a discount) from the Federal

Deposit Insurance Company (FDIC) and the Resolution Trust Corporation (RTC), which the FDIC and RTC acquired from failed banks and savings and loans, respectively.  Most of these loans were in default at the time that they were purchased and assigned to Cadle Co. Many of the loans were consumer loans.  After purchasing the loans, Cadle routinely makes collection demands and files suits against loan borrowers, although some of the loans purchased may have already been reduced to judgment. Cadle's collection demands, suits and judgments often result in Cadle recovering money and property from individuals on consumer debts throughout Texas. These practices have continued throughout the 1990s and the 2000s to date, and Cadle Co. now owns approximately 50,000 loans throughout the United States, and hundreds or thousands of loans and judgments scattered throughout the State of Texas against individual Texas residents.  Cadle Co.'s books and records will reflect the exact number of consumer loans to individual borrowers residing in Texas, the exact number of judgments against individual Texas residents, and the exact amount of money and property that Cadle has acquired from these Texas residents since March 5, 2007.

11.     In the late 1980s, Plaintiff borrowed money from Security Bank for personal and household purposes.  The note was subsequently acquired by Cadle Co. through a sealed bid sale from the FDIC as seller *in Houston, Texas*, on January 4, 1991.  The loan was in default at the time of Cadle Co.'s purchase.  On information and belief, Daniel C. Cadle was in Houston when the bid and purchase was made, and made the decision to purchase Plaintiff's loan.

12.     In 1991, Plaintiff informed Cadle Co. that he was living on Social Security funds.

13.     In 1993, Cadle Co. obtained a judgment against Plaintiff on the Security Bank

loan while the loan was in default.[1]

14.     Daniel C. Cadle is the Chief Executive Officer, director and controlling shareholder of Cadle Co.  Thus, Mr. Cadle is ultimately responsible for the decisions made by Cadle Co. and constitutes Cadle Co.'s executive management.  On information and belief, Mr. Cadle either made the decision to garnish Plaintiff's Social Security funds, or ratified or approved the decision by Ray Diamond to garnish Plaintiff's Social Security funds.

15.     Ray Diamond is an "account officer" and employee of Cadle Co., and was the "account officer" assigned to Plaintiff's "account" at Cadle Co.

16.     On February 5, 2008, Cadle had a Writ of Garnishment, After Judgment, issued in Cause No. 579,602-801 in the County Civil Court at Law No. One of Harris County Texas.  The Writ of Garnishment was against Compass Bank to garnish any indebtedness owed to Plaintiff. The Writ of Garnishment was served on Compass Bank on or about February 11, 2008; at that time all of the funds in Plaintiff's bank account with Compass Bank were seized and withheld from Plaintiff totaling $25,836.83 (the "Compass Bank Funds").  This bank account was opened by Plaintiff in Houston, Harris County, Texas, and Plaintiff was prevented in Harris County, Texas from using his funds in the account.

17.     At all relevant times, Defendants could have sought discovery under Texas Rules of Civil Procedure 621a to determine whether there were any Social Security funds in Plaintiff's bank account before garnishing the account, so that the writ could be specifically prepared to exclude from the effect of the garnishment Plaintiff's Social Security funds.

---

[1] The issue of the invalidity of this judgment is currently the subject of a petition for bill of review proceeding, which is on appeal before the First Court of Appeals District of Texas.

However, Defendants' intent was obviously not to cause Plaintiff the least harm, but rather to cause him the most harm as evidenced by Ray Diamond's letter of July 22, 2008.

18.    Plaintiff's Compass Bank Funds contained, in part, Social Security funds received by Plaintiff from the United States Treasury.  Cadle wrongfully garnished Plaintiff's Social Security funds.  Cadle has been informed and is aware that Plaintiff's Compass Bank Funds contained Social Security funds.  Plaintiff made demand upon Cadle to immediately cause Plaintiff's Social Security funds to be released from the effect of the garnishment.  Despite being provided verified documentation showing that the garnished account contained Plaintiff's Social Security funds, and despite Plaintiff's demand, Cadle has failed and refused to cause Plaintiff's take Social Security funds to be released from the effect of the garnishment, and such Social Security funds remain unavailable to Plaintiff.  Since the garnishment, Plaintiff has been prevented from accessing any of his Compass Bank Funds, including, but not limited to, his Social Security funds.

19.    In addition to the loss of the use and enjoyment of Plaintiff's property, Plaintiff's injuries which are a direct and proximate result of Defendants' conduct include, without limitation, mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.  These created a substantial disruption in Plaintiff's daily routine, including, but not limited to, eating, sleeping, social interaction, or carry on any other activities which, until the time of the alleged injury, he could accomplish on a day-to-day basis without difficulty. Plaintiff alleges that the damages resulting from these injuries are in excess of $100,000.00.

20.    Ray Diamond made and/or executed the decision of Cadle Co., with the

7

approval or ratification of Daniel C. Cadle.  However, despite being provided competent, sworn documentation that the funds contained in Plaintiff's garnished bank account included Plaintiff's Social Security funds, Mr. Diamond nevertheless wrote in a letter to Plaintiff's attorney that "Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the funds." (No Emphasis added). To date, Cadle has failed and refused to cause the release of Plaintiff's Social Security funds.

21.    Plaintiff would show that Cadle, knowing that elderly persons deposit Social Security funds in their bank accounts, proceeds to negligently, or, intentionally, willfully and recklessly, garnish bank accounts of elderly persons.

22.    Cadle Co. is liable to Plaintiff for the acts and/or omissions of Mr. Cadle and Mr. Diamond as described herein.  The corporate defendants are liable for the acts and omissions made by and through their respective officers, employees, representatives.

## PROHIBITION AGAINST GARNISHING SOCIAL SECURITY FUNDS

23.    Section 407(a) of the Social Security Act, 42 U.S.C.A. § 407(a), states as follows:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, **and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process**, or to the operation of any bankruptcy or insolvency law.  [Emphasis added]

42 U.S.C. 1304 provides:

> The right to alter, amend, or repeal any provision of this [Social Security] Act is reserved, to the Congress.

24.    To the extent that any Texas statute can be interpreted to allow execution, levy, attachment, garnishment or other legal process to attach seize or garnish Social Security

funds, such law is preempted.   There are no exceptions in the Social Security Act that allows for temporary or provisional garnishments of Social Security funds.  Furthermore, under Texas law, before garnishing a bank account, judgment creditors can take the deposition of judgment debtors to aid in the enforcement of the judgment in order to determine whether the judgment debtor has exempt Social Security funds in the account before seeking a garnishment.  In other words, judgment creditors who choose to garnish funds without first conducting a deposition or other discovery to determine the nature of the funds, does so at the risk of violating Section 407(a) of the Social Security Act.

25.     At all times relevant hereto, Defendants had a duty not to garnish or otherwise execute on exempt Social Security funds of Plaintiff and other judgment debtors.  Ignoring this duty, Defendants have taken a garnish first, worry later, approach.

## THE TEXAS CONSTITUTION'S RIGHT TO PRIVACY

26.     Article 1, Section 9 of the Texas Constitution provides as follows:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

This language is similar to Article II, Section 7 of the Colorado Constitution.  The Colorado Supreme Court has concluded that a bank depositor has a reasonable expectation of privacy in the bank records of his financial transactions, which is protected under this section of its Constitution.  See *Charnes v. Digiacomo*, 200 Colo 94, 100, 612 P.2d 1117, 1121 (Colo. 1980).  Courts of other states have similarly held.  See *State v. Thompson,* 810 P.2d 415 (Utah 1991); *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979); *State v. Popenhagen*, 749 N.W.2d 611 (Wis. 2008).  The issue has not been addressed by Texas

courts.

27.     Plaintiff contends that Texas residents have a reasonable expectation of privacy in their bank records of their financial transactions, which is protected by Article 1, Section 9 of the Texas Constitution.

## DEFENDANTS' INTEREFERENCE WITH PLAINTIFF'S AND THE CLASS' EXPECTATION OF PRIVACY FOR THEIR BANK RECORDS

28.     At all times relevant hereto, Defendants had a duty to Plaintiff and the class not to interfere with their right to privacy.  In their attempts to collect on their judgments, Cadle has a pattern and practice of garnishing bank accounts.  On information and belief, in order to locate bank account information of its alleged judgment debtors, Cadle has a pattern and practice of using the services of bank account search firms, which surreptitiously obtained such bank account information from sources in violation of Plaintiff's and the Class' expectation of privacy for these records.

## CADLE'S VIOLATIONS OF THE TEXAS FINANCE CODE (TEXAS DEBT COLLECTION ACT)

29.     Cadle Co. purchases debts in default, and is therefore a "debt collector" and "third-party debt collector" as those terms are defined under Section 392.001 of the Texas Finance Code.  See *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496 (7th Cir. 2007). Texas Finance Code § 392.101(a) provides, in relevant part, that "[a] third-party collector . . . may not engage in debt collection unless the third-party debt collector . . . has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section."  Despite this requirement, Cadle Co. had not obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section

392.101, as of the time this action was filed.  Since this action was filed, on information and belief, Cadle Co. filed a bond with the Texas Secretary of State on January 11, 2010, which is an admission of its prior non-compliance.

30.     Texas Finance Code § 392.403(a) allows a "person" to sue for (1) injunctive relief to prevent or restrain a violation of Chapter 392, and (2) actual damages sustained as a result of a violation of Chapter 392.  Section 403(b) provides that a person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.  Section 403(e) provides that a person who successfully maintains an action under this section for violation of Section 392.101 is entitled to not less than $100 for each violation of Chapter 392.  Section 392.404 provides that a violation of Chapter 392 is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.  Plaintiff and the Class would show that Cadle Co. and Daniel C. Cadle have knowingly and intentionally failed to comply with Chapter 392 in an attempt to conceal their debt collection activities from the State of Texas, because both Cadle Co. and Daniel C. Cadle have previously been held in contempt and fined $461,000 by the Second Court of Appeals District of Texas, and the court of appeals has previously ruled that Daniel C. Cadle be confined "in any county jail or lockup of the State for a period of 180 calendar days."  See *Cadle Co. v. Lobingier*, 50 S.W.3d 662 (Tex. App. – Fort Worth 2001).  In addition, Plaintiff alleges that the Cadle Co. and Daniel C. Cadle have a pattern or practice of violating consumer debt collection laws.  Indeed, Plaintiff would show that Cadle Co. has been denied a consumer debt collection license by the Massachusetts Division of Banks, has agreed to an order to refrain from

11

operating a debt collection business by collecting, or attempting to collect, directly or indirectly, debts owed by residents of the Commonwealth, without a license of the Massachusetts Division of Banks, and has been the subject of Cease and Desist Directives issued by the Massachusetts Division of Banks.

31.     Despite the consumer debt status of Plaintiff's alleged debt, Cadle Co. has violated Texas Finance Code § 392.304(a)(8) by misrepresenting the character, extent, or amount of the alleged debt, and misrepresenting the status of the alleged debt both in this proceeding and in state court proceedings.

32.     Defendants Daniel C. Cadle and Ray Diamond knew that by initiating the garnishment action (from Ohio or wherever else they might have been), the garnishment and injury to Plaintiff was going to occur in the State of Texas.  Here, Mr. Cadle directed his company, The Cadle Company, to garnish Plaintiff's bank account containing Social Security funds in violation of Federal law, and to engage in debt collection in the State of Texas without having a certificate of authority from the Texas Secretary of State to do so, or a debt collector's bond to do so.  Since the State of Texas requires debt collectors, such as Mr. Cadle and Ray Diamond, to have a bond before engaging in debt collection activities in the State of Texas, they should have reasonably anticipated being haled into court in Texas.

**CADLE'S VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT**

33.     Plaintiff is a consumer under the FDCPA.  Cadle has been found by other courts to be a "debt collector" as that term is defined by 15 U.S.C. Section 1692a(6).  See *D.A.N. Joint Venture III, L.P. v. Armstrong*, 2007 WL634457 (Ohio App. 11 Dist. 2007) (The Cadle Company stipulated that it was a "debt collector" for the purposes of the Fair

Debt Collections Practices Act); *Cadle Company v. Schlichtmann*, 123 Fed. Appx. 675, 2005 WL 293666 (6th Cir. 2005) (Cadle Company is an Ohio-based debt collector.)

34.    Cadle Co. has made numerous acknowledgements and/or admissions that Plaintiff's alleged debt was subject to the FDCPA.  For example, a letter that Plaintiff received from Cadle Co. dated January 17, 1991, states "Please read the accompanying notice, which we provide in compliance with ***the Fair Debt Collection Practices Act***." (Emphasis added.)  In addition, letters sent by The Cadle Company in 2008 and 2009 to Plaintiff's attorney regarding the alleged debt also contained the required FDCPA disclosure.  Specifically, the 2008 and 2009 letters state, in relevant part, as follows:

> In accordance with ***15 U.S.C. 1692e(11)***, please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose.

(Emphasis added.)

35.    The FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). A "high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector." *Musso,* 194 F.R.D. at 46 (citing *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F.Supp. 61, 67 (E.D.N.Y.1994); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1336-37 (D.Utah 1997)).

36.    Defendant Daniel C. Cadle was personally involved in the collection of Plaintiff's alleged debt, as well as the unlawful collection letters sent to Plaintiff.  On information and belief, Mr. Cadle knew and ratified the unlawful practices of Cadle Co.,

and/or he developed and implemented Cadle Co.'s unlawful practices made the subject of this Complaint; therefore, Mr. Cadle is a debt collector under the FDCPA (and the Texas Debt Collection Act), and Mr. Diamond's involvement in the wrongful garnishment is a violation of the FDCPA (and Texas Debt Collection Act).

37.     Defendant Ray Diamond was also personally involved in the collection of Plaintiff's alleged debt, as well as the unlawful collection letters sent to Plaintiff.  Mr. Diamond sent a letter dated July 22, 2008, wherein he completely disregarded the fact that Social Security funds were in Plaintiff's bank account when garnished, and ignored Plaintiff's demand for the release of his Social Security funds.  Mr. Diamond stated in his letter, as follows:

> The Cadle Company doubts and denies that the frozen funds are cause Mr. Bray harm and injury. . . .  Although Mr. Bray has provided alleged sworn evidence that the funds are Social Security funds, The Cadle Company absolutely disagrees for reasons that will not be argued in this letter but reserved for argument in front of the Judge.  Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the funds.  The Cadle Company reserves all arguments, rights, remedies and defenses regarding the garnished monies. . . . As a final point, please advise as to how and when your client will begin to pay on this account.

Mr. Diamond must have known that his refusal to cause the release of Plaintiff's Social Security funds would injure Plaintiff and cause Mr. Diamond to be haled into this forum. Plaintiff provided the Cadle defendants with an affidavit and copies of bank statements and deposits for the garnished bank account.  Subsequently, Compass Bank also provided Defendants with this same information.  Despite this evidence that the bank account included Plaintiff's Social Security funds, the Cadle defendants refused to cooperate in having the Social Security funds released.  Clearly, the Cadle defendants' refusal to cause Plaintiff's

Social Security funds to be released was for an improper purpose of harming, injuring and harassing Plaintiff, and to strong-arm and extort money (including his Social Security funds) from him.

38.     In early 2009, Ray Diamond contacted Maximo Caballero and his wife, and told them that he was with The Cadle Company, a collection agency, and that he was gathering information about Plaintiff.  He specifically asked them whether Plaintiff owned the home they were living in, or owned the note for the home.   According to Mr. Caballero, he was abrupt, rude and aggressive in trying to get information from them.  Mr. Diamond's communications with Mr. and Mrs. Caballero were not necessary for execution or enforcement of postjudgment judicial remedy.

39.     The Federal Trade Commission Staff Commentary on the FDCPA explains that this definition includes "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owed another." 53 Fed.Reg. 50102 (Dec. 13, 1998).  The FDCPA expressly prohibits certain acts by *"any* person ... in *any* business." 15 U.S.C. § 1692a(6) (emphasis added). Without distinguishing between an employee's position within the corporation, the Staff Commentary also explains that "any person" includes an "employee of a *corporation.*" 53 Fed.Reg. 50102 (Dec. 13, 1988) (emphasis added).  Therefore, Ray Diamond is a debt collector under the FDCPA (and the Texas Debt Collection Act), and Mr. Diamond's involvement in the wrongful garnishment is a violation of the Texas Debt Collection Act and FDCPA.

40.     In addition, Mr. Diamond's communications with Mr. and Mrs. Caballero are a violation of the FDCPA.  A debt collector is allowed to communicate with third parties

without needing to first obtain the borrower's permission only when the purpose of the communication is to obtain location information.  Mr. Diamond did not contact Mr. and Mrs. Caballero to obtain location information.  The debt collector cannot state that the consumer owes any debt and may only have one contact with the third party. 15 U.S.C. § 1692b(3). Further, once the debt collector has the consumer's home address and phone number or work address, its future activities do not fall within the location information criteria and any further contact is not permissible.  Once the debt collector knows that a consumer is represented by an attorney with respect to the debt and can easily ascertain the attorney's name and address, then the debt collector's ability to contact third parties for location information is terminated.

15 U.S.C. § 1692b(3).  Here, Diamond already knew Plaintiff's place of abode before he ever contacted Mr. and Mrs. Caballero.

41.    The Cadle defendants' contact with Windsearch, Inc., a bank account search firm, was a violation of the FDCPA, because the Cadle Defendants' communication with Windsearch was not "reasonably necessary to effectuate a postjudgment judicial remedy." See The Federal Trade Commission Staff Commentary for Section 805(b).

## **PLAINTIFF'S FIRST CAUSE OF ACTION**
### **(DECLARATORY JUDGMENT)**

42.     Plaintiff by this reference incorporate the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

43.     Plaintiff brings this claim for a declaratory judgment under Federal Rules of Civil Procedure 57 and 28 U.S.C. §§2201, 2202, asking the Court to declare that Section 407(a) of the Social Security Act prohibits Cadle from garnishing the Social Security funds of Plaintiff, and that Cadle violated Section 407(a) by garnishing Plaintiff's Social Security funds held in Plaintiff's Compass Bank account.

## **PLAINTIFF'S SECOND CAUSE OF ACTION**
### **(INJUNCTIVE RELIEF)**

44.     Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

45.     Plaintiff brings this claim for injunctive relief asking the Court to permanently enjoin the conduct and practices of Defendants complained of herein, as allowed under Texas Business & Commerce Code § 17.50(b)(2) or as may otherwise be allowed by law.  Plaintiff also seeks pursuant to Texas Business & Commerce Code § 17.50(b)(3), orders necessary to restore to Plaintiff all monies or property, real or personal, which may have been acquired by Cadle in violation of Subchapter E, Chapter 17, Business & Commerce Code.

## **PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION**
### **(INVASION OF RIGHT TO PRIVACY, ABUSE OF PROCESS, ACTUAL DAMAGES AND EXEMPLARY DAMAGES)**

46.     Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

47.     The elements of an abuse of process claim include (1) an illegal, improper, or perverted use of process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Preston Gate, L.P. v. Bukaty,* 248 S.W.3d 892, 897 (Tex.App.-Dallas 2008, no pet.). In order to be an abuse, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do collateral things that he could not be compelled to do. *Id.*

48.     Defendants invaded Plaintiff's right to privacy in his bank records of his financial transactions, by intruding on Plaintiff's solitude, seclusion, and private affairs, which would be highly offensive to a reasonable person.  As a direct and proximate result of Defendants' intrusion, Plaintiff has suffered injury and damages.  Since Texas recognizes an intentional or willful invasion of a person's right to privacy as a tort.  See *Billings v. Atkinson*, 489 S.W.2d 858, 859 - 861 (Tex. 1973); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); Restatement (Second) of Torts § 652B (1977).  Defendants knew or should have known that obtain Plaintiff's private, protected and personal information about a bank account, especially one of an 84 year old individual with a social security number, would be a violation of that individual's rights and could cause Defendants to be hailed into a court in the State of Texas where the bank account and individual is located.  On information and belief, the Cadle defendants have also hired private investigators or other persons to surveil, harass, and stalk Plaintiff at and near his home.  These tactics by the Cadle defendants have intruding on Plaintiff's solitude, seclusion, and private affairs, for which Plaintiff has suffered injury and damages.

49.     Cadle made an illegal, improper, or perverted use of the writ of garnishment, which was neither warranted nor authorized by the writ, and which immediately and directly injured and damaged Plaintiff in Harris County, Texas.  Cadle had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the writ of garnishment, and damage resulted to Plaintiff as a direct and proximate result of the irregular act.  Cadle used the writ of garnishment to seize Plaintiff's Social Security funds in an attempt to force/extort payment from Plaintiff out of those funds.  Actual damage (both economic and non-economic) has resulted to Plaintiff as a direct and proximate result of Defendants' conduct described herein.

50.     As a direct and proximate result of Defendants' acts, conduct and omissions, Plaintiff has been injured and sustained damages.  In addition to the loss of the use and enjoyment of Plaintiff's property, Plaintiff's injuries which are a direct and proximate result of Defendants' conduct include, without limitation, mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.  These created a substantial disruption in Plaintiff's daily routine, including, but not limited to, eating, sleeping, social interaction, or carry on any other activities which, until the time of the alleged injury, he could accomplish on a day-to-day basis without difficulty.  Defendants' acts, conduct and/or omissions as alleged above were negligent, or alternatively, grossly negligent, intentional, and/or aggravated by that kind of willfulness and wantonness for which the law allows the imposition of exemplary damages.  Alternatively, Defendants' acts were intentional, willful, wanton, and without justification or excuse and were done with gross indifference to the rights of Plaintiff, and the intention of

doing substantial injury or harm to Plaintiff.  At the time the causes of action described herein accrued, (1) certain employees of the corporate defendants were responsible for the acts and omissions described herein and these employees were in a managerial capacity for said Defendants and were acting within the course and scope of their employment, as a manager of said Defendants; or (2) the corporate defendants authorized the doing and the manner of the act or omission; or (3) the corporate defendants or the manager ratified or approved the act or omission.  Alternatively, Defendants' acts or omissions described herein are such an entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety and welfare of Plaintiff.  In this connection, Plaintiff will show that as a result of Defendant's conduct, Plaintiff has suffered, among other things, losses of time and other expenses, including attorneys' fees incurred in the investigation and prosecution of this action. Plaintiff further alternatively alleges that the conduct of Defendants as described above was malicious, by reason of which Plaintiff is entitled to recover exemplary damages and attorney's fees, for which he now sues.  For the foregoing reasons, Plaintiff is entitled to exemplary damages; accordingly, Plaintiff seeks the recovery of exemplary damages from each Defendant in an amount in excess of $75,000.00 each.

### PLAINTIFF'S FIFTH CAUSE OF ACTION
### (REMEDIES UNDER THE TEXAS DEBT COLLECTION ACT AND TEXAS DECEPTIVE TRADE PRACTICES ACT)

51.    Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

52.    Cadle has violated Chapter 392 of the Texas Finance Code by failing to obtain a surety bond issued by a surety company authorized to do business in the State of Texas as

prescribed by Section 392.101 of the Texas Finance Code.  This violation is actionable by Plaintiff under Sections 392.403 and 392.404.  In addition, since Cadle has failed to obtain a surety bond as prescribed by Section 392.101 of the Texas Finance Code, Cadle "may not engage in debt collection" in the State of Texas.  See Section 392.101.  Cadle has also violated Texas Finance Code § 392.304(a)(8), by claiming that Plaintiff's alleged debt was not made for personal purposes.  Each debt collection activity engaged in by Cadle to collect from Plaintiff is a violation of Chapter 392, and is also actionable under Sections 392.403 and 392.404 of the Texas Finance Code.

53.     Since Plaintiff is a consumer and the alleged debt is properly classified as a consumer debt, Plaintiff is entitled to sue under the FDCPA and under Texas Finance Code § 392.403(a) for (1) injunctive relief to prevent or restrain a violation of Chapter 392, and (2) actual damages sustained as a result of a violation of Chapter 392.  Section 392.403(b) provides that a person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.  Section 392.403(e) provides that a person who successfully maintains an action under this section for violation of Section 392.101 is entitled to not less than $100 for each violation of Chapter 392.  A violation of Chapter 392 is a deceptive trade practice for which Plaintiff is entitled to relief under Subchapter E, Chapter 17, Texas Business & Commerce Code.  Texas Finance Code § 392.404.  Plaintiff seeks to recover from Cadle an amount not less than $100 for each such violation.

54.     By violating the Texas Debt Collection Act, Plaintiff is entitled to relief under Section 392.403(b) and 403(e) of the Texas Finance Code, as well as relief under Subchapter

E, Chapter 17, Texas Business & Commerce Code.  Texas Finance Code § 392.404.  Since a

violation of Chapter 392 is a deceptive trade practice and violation of Subchapter E, Chapter

17, Texas Business & Commerce Code, Plaintiff seeks to recover from Cadle his actual

damages; alternatively, Plaintiff alleges and would prove that Cadle's conduct in violating

Chapter 392 was committed knowingly and intentionally, entitling Plaintiff to recover not

more than three times the amount of his actual damages (which are in excess of $75,000)

from each of the Cadle defendants in accordance with Section 17.50(h) of the Texas

Deceptive Trade Practices-Consumer Protection Act.

## PLAINTIFF'S SIXTH CAUSE OF ACTION
### (REMEDIES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT)

55.     Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of

this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

56.     Postjudgment activities to collect an alleged consumer debt by a debt collector

may constitute a violation of the FDCPA.  See *Taylor v. Heath W. Williams, L.L.C.*, 510

F.Supp.2d 1206, 1211 (N.D.Ga.,2007). 15 U.S.C. § 1692c(b) states "Except as provided in

section 1692b[2] of this title, without the prior consent of the consumer given directly to the

debt collector, or the express permission of a court of competent jurisdiction, or as

reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not

communicate, in connection with the collection of any debt, with any person other than the

consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the

creditor, the attorney of the creditor, or the attorney of the debt collector."  The Federal Trade

---

[2] Section 1692b permits contact with third parties only to obtain location information.

22

Commission Staff Commentary[3] for Section 805(b)6 states that "The words "as reasonably necessary to effectuate a postjudgment judicial remedy" mean a communication necessary for execution or enforcement of the remedy. . . "

57.     Defendants violated 15 U.S.C. § 1692f(1) and (6) by using an unfair and/or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff. Defendants had no right to freeze or garnish Plaintiff's bank account.  A debt collector's act in collecting a debt may be "unfair" if it causes injury to the consumer that is (1) substantial, (2) not outweighed by countervailing benefits to consumers or competition, and (3) not reasonably avoidable by the consumer. *Hage v. General Service Bureau*, 306 F.Supp.2d 883 (D. Neb. 2003); FTC Staff Commentary on § 808, 53 Fed. Reg. 50097, available at 1988 WL 269068 (F.R.) (Fed. Trade Commission 1988).  A debt collector may be found liable for violations of state and federal debt collection statutes without regard to the collector's intent to violate the statute or its knowledge of the violation.  *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355 (S.D. Fla. 2000) (FDCPA is strict liability statute and knowledge or intend need not be pled); *Irwin v. Mascott*, 94 F.Supp2d 1052 (N.D. Ca. 2000) (FDCPA is a strict liability statute and no showing of intent is necessary to establish liability).

58.     One of the express purposes for enacting the FDCPA was to level the playing field so that debt collectors who comply with the law are not at a competitive disadvantage with debt collectors who use illegal debt collection tactics.  There is no competitive justification for the Defendants' conduct.

---

[3] http://www.ftc.gov/os/statutes/fdcpa/commentary.shtm;  see Appendix

59.     The harm to Plaintiff was not reasonably avoidable by Plaintiff because, despite his best efforts to avoid harm, he ultimately had no control over Defendants' garnishment of his bank account.

60.     Defendants' garnishment of Plaintiff's bank account was an unfair and/or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f(1) and (6).

61.     Mr. Diamond's contacts with Mr. and Mrs. Caballero were a violation of 15 U.S.C. § 1692b(3).

62.     Plaintiff seeks herein the maximum allowable damages and amounts recoverable under the FDCPA, including, but not limited to, damages described under 15 U.S.C. § 1692k, costs of the action, and reasonable attorneys' fees.

## PLAINTIFF'S SEVENTH CAUSE OF ACTION
## (TORT OF UNREASONABLE COLLECTION EFFORTS)

63.     Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

64.     The tort of "unreasonable collection efforts" recognizes the right of consumers to be free from unreasonable and wrongful collection efforts by creditors. The standard of conduct for unreasonable collection efforts is ruled by the negligence doctrine. *Moore v. Savage* (Tex.Civ.App.Waco, 1962) 359 S.W.2d 95 [writ refused n.r.e.] *per curiam* 362 S.W.2d 298 (Tex.1962). The tort has been defined as: "[collection] efforts such as a person of ordinary care and prudence would not have used under the same or similar circumstances." In order to recover exemplary damages for a creditor's unreasonable collection efforts, the debtor must prove malice or reckless disregard for the rights of others. *Ware v. Paxton,* 359 S.W.2d 897, 898-899 (Tex.1962).

65.     Defendants were negligent when they engaged in unreasonable collection efforts by garnishing Plaintiff's bank account.  Defendants were also negligent when they engaged in unreasonable collection efforts by hiring private investigators or other persons to surveil, harass, and stalk Plaintiff at and near his home, and deceived Compass Bank into producing Bray's bank account records.

66.     In the alternative, Cadle's acts described in the preceding paragraph were done out of malice or with reckless disregard for the rights of Plaintiff, allowing for the recovery of exemplary damages which Plaintiff seeks herein.

## CLASS ALLEGATIONS

67.     Plaintiff by this reference incorporates the allegations of paragraphs 1-41 of this Complaint as if fully set forth herein.

68.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following three classes (collectively, the "Class"):

(1) All persons who are citizens of and reside in the State of Texas who have a judgment against him or her which is, or has been, owned by The Cadle Company since March 5, 2007.

(2) All persons who are citizens of and reside in the State of Texas from whom The Cadle Company has attempted, since March 5, 2007, to collect an alleged consumer debt.

(3) All persons who are citizens of and reside in the State of Texas who had their bank account(s) garnished by The Cadle Company, since March 5, 2007, and who was 65 years old or older at the time of the garnishment.

69.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment

or amended complaint. Specifically excluded from the proposed Class are the Defendants, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and its successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

70.     The Class satisfies Rule 23(a) because of the following:

(a)     ***Numerosity***.   The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds or thousands of Texas residents located throughout the State of Texas.   The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

(b)     ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(1) Whether Section 407(a) of the Social Security Act prohibits the garnishment of Social Security funds in a bank account;

(2) Whether Texas residents have a reasonable expectation of privacy in their bank records of their financial transactions, which is protected by Article 1, Section 9

26

of the Texas Constitution;

(4) Whether Cadle violated Article 1, Section 9 of the Texas Constitution;

(5)  Whether Cadle violated Texas Finance Code Section 392.101;

(6) Whether Cadle abuses process when it garnishes bank accounts;

(7) Whether Cadle violated the Texas Deceptive Trade Practices – Consumer Protection Act;

(8)  Whether Cadle violated the federal Fair Debt Collection Practices Act;

(9) Whether Cadle engaged in unreasonable collection efforts, and whether those efforts were done with malice or will disregard of the rights of the Class; and

(10) Whether Plaintiff and members of the Class are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein.

(c)     ***Typicality***.  The claims of Plaintiff are typical of the claims of the members of the Class in that Plaintiff and each member of the Class has a judgment against him or her that is or was owned by Cadle.

(d)     ***Adequacy of Representation***.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no interests antagonistic or adverse to those of the Class.  Plaintiff has retained counsel highly experienced in complex class action litigation, and intends to prosecute this action vigorously.

71.     The class satisfies Rule 23(b)(2) because Defendants have engaged in a course of conduct common to all members of the class, and final declaratory and/or injunctive relief in favor of the Class as a whole is therefore appropriate.

72.     ***Superiority***.  The Class satisfies Rule 23(b)(3) because a class action is

superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

73.    In the alternative, the Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory relief and/or injunctive relief with

respect to the members of the Class as a whole.

74.     The claims asserted herein are based on the United States Constitution, the federal Fair Debt Collection Practices Act, the Texas Constitution, the Texas Debt Collection Act and the Texas Deceptive Trade Practice-Consumer Protection Act, and Texas common law, all of which are applicable to all of the Class members.

75.     Adequate notice can be given to Class members directly using information maintained in Defendants' records, or county and district clerk records, or through notice by publication.

## CLASS' FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

76.     Plaintiff by this reference incorporate the allegations of paragraphs 67-75 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

77.     Plaintiff brings this claim for a declaratory judgment on behalf of the Class, under Federal Rules of Civil Procedure 57 and 28 U.S.C. §§2201, 2202, asking the Court to declare that Section 407(a) of the Social Security Act prohibits Cadle from garnishing the Social Security funds of the members of the Class.

### CLASS' SECOND CAUSE OF ACTION
### (INJUNCTIVE RELIEF)

78.     Plaintiff by this reference incorporates the allegations of paragraphs 67-75 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

79.     Plaintiff brings this cause of action for injunctive relief on behalf of the Class asking the Court to permanently enjoin the conduct and practices of Defendants complained of herein, as allowed under Texas Business & Commerce Code § 17.50(b)(2) or as may otherwise be allowed by law.  Plaintiff also seeks pursuant to Texas Business & Commerce Code § 17.50(b)(3), orders necessary to restore to the Class all monies or property, real or personal, which may have been acquired by Cadle in violation of Subchapter E, Chapter 17, Business & Commerce Code.

### CLASS' THIRD CAUSE OF ACTION
### (REMEDIES UNDER THE TEXAS DEBT COLLECTION ACT AND TEXAS DECEPTIVE TRADE PRACTICES ACT)

80.     Plaintiff by this reference incorporates the allegations of paragraphs 67-75 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

81.     Plaintiff brings this cause of action on behalf of the Class because Cadle has violated Chapter 392 of the Texas Finance Code by failing to obtain a surety bond issued by a surety company authorized to do business in the State of Texas as prescribed by Section 392.101 of the Texas Finance Code.  This violation is actionable by Plaintiff and the Class under Sections 392.403 and 392.404.  In addition, since Cadle has failed to obtain a surety bond as prescribed by Section 392.101 of the Texas Finance Code, Cadle "may not engage in debt collection" in the State of Texas.  See Section 392.101.  Each debt collection activity

engaged in by Cadle to collect from the Class is a violation of Chapter 392, and is also actionable under Sections 392.403 and 392.404 of the Texas Finance Code.

82.     Since the members of the Class are consumers and the alleged debt is properly classified as a consumer debt, Plaintiff is entitled to sue on behalf of the Class under the FDCPA, and under Texas Finance Code § 392.403(a) for (1) injunctive relief to prevent or restrain a violation of Chapter 392, and (2) actual damages sustained as a result of a violation of Chapter 392.  Section 392.403(b) provides that a person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.  Section 392.403(e) provides that a person who successfully maintains an action under this section for violation of Section 392.101 is entitled to not less than $100 for each violation of Chapter 392.  A violation of Chapter 392 is a deceptive trade practice for which the Class is entitled to relief under Subchapter E, Chapter 17, Texas Business & Commerce Code.  Texas Finance Code § 392.404.  Plaintiff, on behalf of the Class, seeks to recover from Cadle an amount not less than $100 for each such violation.

83.     By violating the Texas Debt Collection Act, Plaintiff is entitled to relief on behalf of the Class, under Section 392.403(b) and 403(e) of the Texas Finance Code, as well as relief under Subchapter E, Chapter 17, Texas Business & Commerce Code.  Texas Finance Code § 392.404.  Since a violation of Chapter 392 is a deceptive trade practice and violation of Subchapter E, Chapter 17, Texas Business & Commerce Code, Plaintiff, on behalf of the Class, seeks to recover from Cadle his actual damages; alternatively, Plaintiff alleges and would prove that Cadle's conduct in violating Chapter 392 was committed knowingly and intentionally, entitling each Class member to recover not more than three times the amount of

their actual damages from each of the Cadle defendants in accordance with Section 17.50(h) of the Texas Deceptive Trade Practices-Consumer Protection Act.

## CLASS' FOURTH CAUSE OF ACTION
## (REMEDIES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT)

84.     Plaintiff by this reference incorporates the allegations of paragraphs 67-75 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

85.     Defendants had no right to freeze or garnish bank accounts of members of the Class.  Defendants' garnishment of Class members' bank account(s) was an unfair and/or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f(1) and (6).

86.     There is no competitive justification for the Defendants' conduct.

87.     The harm to the Class was not reasonably avoidable by the members of the Class because the Class ultimately had no control over Defendants' garnishment of their bank account(s).

88.     Plaintiff seeks, on behalf of the Class, the maximum allowable damages and amounts recoverable under the FDCPA, including, but not limited to, damages described under 15 U.S.C. § 1692k, costs of the action, and reasonable attorneys' fees.

## CLASS' FIFTH CAUSE OF ACTION
## (TORT OF UNREASONABLE COLLECTION EFFORTS)

89.     Plaintiff by this reference incorporates the allegations of paragraphs 67-75 of this Complaint as if fully set forth herein.  This cause of action is pleaded in the alternative.

90.     Defendants were negligent when they engaged in unreasonable collection efforts by garnishing Class members' bank accounts.

91.     In the alternative, Cadle's acts described in the preceding paragraph were done

32

out of malice or with reckless disregard for the rights of the members of the Class, allowing for the recovery of exemplary damages which Plaintiff seeks on behalf of the Class.

## ATTORNEYS' FEES, COSTS AND EXPENSES

92.     Plaintiff also seeks recovery of their attorneys' fees, costs and expenses as may be allowed by law for the above counts, including, but not limited to, those allowable under Texas Finance Code § 392.403(b), Texas Business & Commerce Code § 17.50(e), and 15 U.S.C. § 1692k(a)(3).

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

2.  For declaratory judgment as requested herein;

3.  For a permanent injunction prohibiting Defendants, jointly and severally, from engaging in the conduct and practices complained of herein, as allowed under Texas Business & Commerce Code § 17.50(b)(2) or as may otherwise be allowed by law.  Plaintiff also seeks pursuant to Texas Business & Commerce Code § 17.50(b)(3), orders necessary to restore to Plaintiff  and the Class all monies or property, real or personal, which may have been acquired by Cadle in violation of Subchapter E, Chapter 17, Business & Commerce Code;

4.  For actual damages, jointly and severally;

5.  For treble damages as allowed under Subchapter E, Chapter 17, Texas Business & Commerce Code;

6.  For exemplary damages, jointly and severally, in favor of Plaintiff;

7.  For pre-judgment and post-judgment interest;

8.  For reasonable attorneys' fees and costs of suit, including expert witness fees;

9.  For writs and processes; and

10. For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

To the full extent available, Plaintiff demands a trial by jury.

Dated:  May 5, 2010.

Respectfully submitted,


/s/ Thomas R. Bray
**THOMAS R. BRAY**
S.D. Texas No. 17629
Texas Bar No. 02926800
1431 Wirt Road, Suite 140
Houston, Texas 77055
Telephone (713) 827-1760
Telecopier (713) 827-7510

**HILL & HILL**
Attorneys at Law
**J. MARCUS HILL**
S. D. Texas No. 4640
Texas Bar No. 09638150
1770 St. James Place, Suite 340
Houston, Texas  77056
Telephone: (713) 688-6318
Telecopier: (713) 688-2817

**ATTORNEYS FOR PLAINTIFF**

## <u>Certificate of Service</u>

In accordance with the Federal Rules of Civil Procedure I hereby certify that a true and

correct copy of the above and foregoing will be automatically accomplished to the following

Filing User through the Notice of Electronic Filing on this 5th day of May, 2010.

Beverly A. Whitley
Bell Nunnally & Martin LLP
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas 75204-2429
Telephone No.: (214) 740-1400
Telecopy No.: (214) 740-1499

Ed Walton
Barron, Newburger & Sinsley PLLC
101 Metro Dr., Suite A
Terrell, Texas 75160
Telephone No.: (972) 499-4833
Telecopy No.: (972) 563-1598


                                        /s/ Thomas R. Bray
                                        Thomas R.  Bray