NO. 4:09-CV-00663

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

_____

ROY H. BRAY, individually and on behalf
of all others similarly situated,
                                                        Plaintiff,

v.

THE CADLE COMPANY, WINDSEARCH, INC.,
DANIEL C. CADLE and RAY DIAMOND,
                                                        Defendants.

_____

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
DEFENDANTS' SECOND MOTION TO DISMISS AND MOTION TO ABSTAIN**
_____

J. MARCUS HILL
State Bar No. 09638150
HILL & HILL, P.C.
1770 St. James Place, Suite 115
Houston, Texas 77056
Telephone: (713) 688-6318
Telecopier: (713) 688-2817

THOMAS R. BRAY
State Bar No. 02926800
1431 Wirt Road, Suite 140
Houston, Texas 77055
Telephone (713) 827-1760
Telecopier (713) 827-7510

**ATTORNEYS FOR PLAINTIFF ROY H. BRAY**
_____

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES.............................................................................................iii

PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS, MOTIONS TO ABSTAIN .......................... 1

I.   RESPONSE TO DEFENDANTS' INTRODUCTION;
     STATEMENT OF NATURE AND STAGE OF PROCEEDING; AND FACTS
     SUPPORTING MOTION TO DISMISS...................................................................... 1

II.  RESPONSE TO DEFENDANTS' GROUNDS FOR MOTION TO DISMISS ............ 6

III. ADDITIONAL BRIEFING AND LEGAL
     ANALYSIS……………………………………12

          A. LEGAL STANDARD FOR A MOTION TO DISMISS................................... 12

          B. LEGAL ANALYSIS OF RULE 12(b)(1)
             MOTION OF THE CADLE COMPANY ......................................................... 18

             Rule 12(b)(1) and Defendants' mootness claim about the bond ....................... 18

             Rule 12(b)(1) and  Defendants' argument that Bray lacks standing to assert a
                DTPA claim………………………………………………………………….18

          C.  LEGAL ANALYSIS OF RULE 12(b)(6) MOTION OF THE CADLE
             COMPANY………….……………………………………………………………20

             Rule 12(b)(6) and the Fair Debt Collections Practice Act (FDCPA),
             Texas Debt Collection Act, and Texas Deceptive Trade Practices Act ............ 20

          D. LEGAL ANALYSIS OF RULE 12(b)(2) and 12(b)(6)
             MOTIONS OF DANIEL C. CADLE AND RAY DIAMOND......................... 26

             Rule 12(b)(2) and 12(b)(6) and Daniel C. Cadle............................................. 26

             Rule 12(b)(2) and 12(b)(6) and Ray Diamond ................................................. 29

i

Specific Jurisdiction Exists Over Cadle and Diamond........................................ 33

E. LEGAL ANALYSIS OF PLAINTIFF'S CLAIMS RELATING
TO THE SOCIAL SECURITY ACT .................................................. 34

F. LEGAL ANALYSIS OF PLAINTIFF'S RIGHT TO PRIVACY CLAIM ........ 37

G. LEGAL ANALYSIS OF PLAINTIFF'S ABUSE OF PROCESS CLAIM ....... 38

H. LEGAL ANALYSIS OF THE ANTI-INJUNCTION ACT AND
ABSTENTION DOCTRINE………………………………………………..·40

IV. CONCLUSION…………………………………..……………………………41

APPENDIX

Federal Trade Commission Staff Commentaries.................................. Appendix - 1
Colorado Constitution, Article 2, Section 7 ......................................... Appendix - 2
*Cadle Company v. Schlichtmann* ......................................... Appendix - 3
*D.A.N. Joint Venture III, L.P. v. Armstrong* ......................................... Appendix - 4
*Egli v. Bass* ..................................................................... Appendix - 5
*Pope v. Vogel* ..................................................................... Appendix - 6

DECLARATIONS

Thomas R. Bray
J. Marcus "Marc" Hill
Maximo Caballero

EXHIBITS

Bray's motions for summary judgment without exhibits ........................... Exhibit A
Judge Cagle's June 15th Order .................................................. Exhibit B
Cadle's Response to Plaintiff's MSJ .......................................... Exhibit C
Redline version of Plaintiff's Amended Complaints................................. Exhibit D
Cadle's Application for Writ of Garnishment ............................................ Exhibit 1
Roy H. Bray affidavit dated 4-2-08, with attachments............................... Exhibit 2
Marc Hill letter dated 7-18-08 ...................................................... Exhibit 3
Ray Diamond (The Cadle Company) letter dated 7-22-08 ........................ Exhibit 4
Jeff Joseph (The Cadle Company) letter dated 6-4-09 ............................. Exhibit 5
Spreadsheet of bank account deposits ......................................... Exhibit 6
Roy H. Bray affidavit dated 3-2-92............................................ Exhibit 7
Cadle Great Southwest, LLC...................................................... Exhibit 8
Cadle Commonwealth Center Application ............................................... Exhibit 9
Massachusetts Attorney General website printouts .................................. Exhibit 10
Texas Secretary of State, printouts of debt collector bond search............. Exhibit 11
Return of Process, showing residence address of Plaintiff ...................... Exhibit 12
Texas Secretary of State's Certificate of Fact .......................................... Exhibit 13

iii

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE**

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102
107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ................................................... 14

*Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990) ........................ 15

*Barnhill v. Automated Shrimp Corp.,* 222 S.W.3d 756
(Tex.App.-Waco 2007, no pet.) ....................................................... 16, 33

*Barrera-Montenegro v. United States,* 74 F.3d 657, 659
(5th Cir.1996)………………………………………………………………..12

*Baubles & Beads v. Louis Vuitton, S.A.* 766 S.W.2d 377
(Tex.App.-Texarkana 1989, no writ) ....................................................... 38

*Bennett v. Arkansas*, 485 U.?S. 395, 108 S.Ct. 1204 (1988) ................................ 34

*Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992)…………………………13

*Billings v. Atkinson*, 489 S.W.2d 858, 859 - 861 (Tex. 1973)……………………38

*Blackstock v. Tatum,* 396 S.W.2d 463
(Tex.App.-Houston [1st Dist.] 1965, no writ) ....................................... 38

*Bossin v. Towber,* 894 S.W.2d 25
(Tex.App.-Houston [14th Dist.] 2000, pet. denied) ............................... 38

*Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260 (9th Cir.1996) ............ 31

*Bray v. Cadle Company*, 880 S.W.2d 813
(Tex. App. – Houston [14th Dist., writ denied) .................................... 24

*Brumbelow v. Law Offices of Bennett and Deloney, P.C.,*
372 F.Supp.2d 615 (D.Utah 2005) ........................................... 27, 28, 31

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462,
105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) .................................... 15

*Cadle Company v. Schlichtmann*, 123 Fed. Appx. 675,
2005 WL 293666 (6th Cir. 2005) ....................................................... 22

iv

*Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ........ 15, 16

*Carden v. Arkoma Assoc.*, 494 U.S. 185 110 S.Ct. 1015 (1992)............................. 5

*City of Huntsville*, 24 F.3d 169, 172 (11th Cir. 1994)................................................ 5

*City of Indianapolis v. Chase Nat'l Bank*,
314 U.S. 63, 69, 62 S.Ct. 15, 17 (1941) ................................................................. 5

*Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800
96 S.Ct. 1236 (1976) ...................................................................................... 10, 38

*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)...........13

*Cruz v. Beto*, 405 U.S. 319 (1972).......................................................................... 17

*D.A.N. Joint Venture III, L.P. v. Armstrong*, 2007 WL634457
(Ohio App. 11 Dist. 2007)...................................................................................... 22

*Davey v. Shaw,* 225 S.W.3d 843, 856 (Tex.App.-Dallas 2007, no pet.) .............. 16

*Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424
 (5th Cir.2001)……………………………………………………………………………12

*Detenbeck v. Koester,* 886 S.W2d 477
(Tex.App.-Houston [1st Dist.] 1994, no writ) ....................................................... 38

*Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320 (D.Utah 1997) .................................. 27

*Dowd v. United Steelworkers Local No. 286*, 253 F.3d 1093 (8th Cir. 2002) ........ 35

*Egli v. Bass,* 1998 WL 560270 *1 (N.D.Ill.1998) ................................................. 27

*Finberg v. Sullivan*, 634 F.2d 50 (3rd Cir. 1980) .................................................. 34

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*,
463 U.S. 1, 16, 103 S.Ct. 2841, 2850 (1983) ........................................................ 5

*Greenfield Energy, Inc. v. Duprey,* 252 S.W.3d 721
(Tex.App.-Houston [14th Dist.] 2008, no pet.) ................................................ 16, 33

*Guidry v. U.S. Tobacco Co.,* 188 F.3d 619 (5th Cir.1999) ................................... 15

*Guyton v. Pronav Ship Mgmt., Inc.,* 139 F.Supp.2d 815 (S.D.Tex.2001) ............. 15

*Hage v. General Service Bureau*, 306 F.Supp.2d 883 (D. Neb. 2003) ................. 36

*Hambrick v. First Security Bank*, 336 F.Supp.2d 890 (E.D. Ark. 2004)............... 35

*Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002) ..................... 17

*Hickey v. O'Bannon*, 287 F.3d 656 (7th Cir. 2002)................................................ 17

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
143 F.3d 1006, 1010 (5th Cir.1998)…………………………………………………13

*Hunt v. Washington State Apple Adver. Comm.,*
432 U.S. 333, 97 S.Ct. 2434 (1977) ...................................................... 17
*Int'l Shoe Co. v. Washington,*
326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) .................................. 13

*Irwin v. Mascott*, 94 F.Supp2d 1052 (N.D. Ca. 2000) ........................................... 36
*Jones v. Petty-Ray Geophysical Geosource, Inc.,*
954 F.2d 1061, 1067 (5th Cir.1992) .................................................... 13

*Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355....................................................... 36

*King v. Schafer*, 940 F.2d 1182 (8th Cir. 1991) ...................................................... 35
*Lopez v. Washington Mutual Bank*, 302 F. 3d 900 (9th Cir. 2002) ........................ 35

*Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 926 (5th Cir.1988)………………..13

*Marengo v. First Massachusetts Bank*, 152 F.Supp.2d 92 (D. Mass. 2001) .......... 35
*McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496 (7th Cir. 2008)................. 22

*Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31 (1st Cir. 2002) ...................... 17

*Monroe v. Frank,* 936 S.W.2d 654 (Tex.App.--Dallas 1996, no writ)................... 20

*Montemayor v. Ortiz,* 208 S.W.3d 627
(Tex.App.-Corpus Christi 2006, pet. denied) ........................................................ 38

*Musso v. Seiders,* 194 F.R.D. 43 (D.Conn.1999) ...................................... 26, 27, 28
*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
253 F.3d 865 (5th Cir.2001) ................................................................... 16
*Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct 590 (1973) ........ 34

*Pikes v. Riddle,* 38 F.Supp.2d 639, 640 (N.D.Ill.1998)......................................... 31

*Pope v. Vogel,* 1998 WL 111576 *1 (N.D.Ill.1998) ............................................. 27
*Preston Gate, L.P. v. Bukaty,* 248 S.W.3d 892

(Tex.App.-Dallas 2008, no pet.) .................................................................... 38

*Revell v. Lidov*, 317 F.3d 467 (5th Cir.2002) .................................................. 16

*Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415 (5th Cir.1993) .. 13, 14, 15

*Sarmiento v. Producer's Gin of Waterproof, Inc.,*
439 F.Supp.2d 725 (S.D.Tex.2006) .................................................................. 14

*Schlobohm v. Schapiro,* 784 S.W.2d 355 (Tex.1990) ..................................... 13

*Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053 (1969)....................................... 5

*Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349 (D. Mass. 2008) ............. 28

*Stripling v. Jordan Prod. Co., L.L.C.,* 234 F.3d 863 (5th Cir.2000) .................... 13

*Suber v. Chrysler Corp.*, 104 F.3d 578 (3d Cir. 1997)....................................... 17

*Tanglewood E. Homeowners v. Charles-Thomas, Inc.,*
849 F.2d 1568, 1572 (5th Cir.1988)……………………………………….. 13

*Taylor v. Heath W. Williams, L.L.C.,* 510 F.Supp.2d 1206 (N.D.Ga.,2007)......... 32

*Teng v. Metropolitan Retail Recovery, Inc.,* 851 F.Supp. 61 (E.D.N.Y.1994)....... 27

*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504,
114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)........................................................... 31

*Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*,
348 F.Supp.2d 903 (S.D. Ohio 2004)................................................................ 34

*Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993…………………………38

*Williams v. Castro,* 21 F.Supp.2d 691 (S.D.Tex.1998) ........................................ 13

*Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994) ......................................... 14, 15

# CONSTITUTIONS

Article 1, Section 9 of the Constitution of the State of Texas ........................... 37

# STATUTES AND RULES

## UNITED STATES CODE

15 U.S.C. § 1692................................................................................................ 4
15 U.S.C. § 1692a............................................................... 22, 24, 26, 30, 31, 32
15 U.S.C. § 1692b.............................................................................................. 32
15 U.S.C. § 1692c.............................................................................................. 32

15 U.S.C. § 1692e ................................................................................................ 21
15 U.S.C. § 1692f ................................................................................... 4, 5, 36, 37
28 U.S.C. § 1332 .................................................................................................... 5
42 U.S.C. § 407 ........................................................................... 4, 5, 9, 10, 11, 34, 35
42 U.S.C. § 1304 .................................................................................................. 35

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b) (1) ............................................................................ 6, 7, 12, 13, 18
Rule 12(b)(2) .............................................................................. 8, 13, 25, 29
Rule 12(b)(6) .......................................................... 7, 9, 10, 11, 12, 17, 20, 25, 29
Rule 12(d) ...................................................................................................... 12
Rule 65 ....................................................................................................... 3, 10

## FEDERAL REGISTER

53 Fed. Reg. 50097 ............................................................................................ 36
53 Fed.Reg. 50102 ............................................................................................. 31

## TEXAS BUSINESS & COMMERCE CODE

Section 17.47(b) ................................................................................................. 20
Section 17.50(b) ........................................................................................... 4, 7, 10
Section 17.50(h) ............................................................................................. 8, 19
Subchapter E, Chapter 17 ................................................................................. 4, 25

## TEXAS FINANCE CODE

Chapter 392 ........................................................................................................ 4
Section 392.001 ........................................................................................ 6, 7, 8, 24
Section 392.101 .................................................................................. 6, 7, 9, 18, 24, 25
Section 392.304 ............................................................................................ 22, 25
Section 392.403 ....................................................................................... 4, 7, 10, 25
Section 392.404 ................................................................................... 8, 19, 20, 25

## TEXAS CIVIL PRACTICE & REMEDIES CODE

Section 17.042 .................................................................................................. 13

## TEXAS GOVERNMENT CODE

Texas Government Code §§ 25.0003 ...................................................................... 6

## TEXAS RULES OF CIVIL PROCEDURE

Rule 621a ........................................................................................................................ 34, 35

**OTHER AUTHORITIES**

O'Connor's Texas Causes of Action 2008, Chapter 15-A; and Chapter 2 §6.6 ............... 10

Restatement (Second) of Torts § 652B (1977) ................................................................. 38

Texas Bar Journal (May 1999) ........................................................................................ 6

<u>FEDERAL TRADE COMMISSION STAFF COMMENTARIES</u>

Section 805 ...................................................................................................................... 33

Section 808 ...................................................................................................................... 36

| | | |
|---|---|---|
| ROY H. BRAY, Individually and<br>On Behalf of All Others Similarly Situated, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | Civil Action No. 09-cv-00663 |
| VS. | §<br>§ | |
| THE CADLE COMPANY,<br>DANIEL C. CADLE,<br>RAY DIAMOND, and<br>WINDSEARCH, INC., | §<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS, MOTIONS TO ABSTAIN

Plaintiff ROY H. BRAY ("Plaintiff") files this response and brief in opposition to the Defendants Second Motion to Dismiss, Motion to Abstain and Brief of The Cadle Company (sometimes called, "Cadle Co."), Daniel C. Cadle ("Cadle"), and Ray Diamond ("Diamond") ("Defendants") ("Motions"), and would show the Court as follows:

**I.   RESPONSE TO DEFENDANTS' INTRODUCTION; STATEMENT OF NATURE AND STAGE OF PROCEEDING; AND FACTS SUPPORTING MOTION TO DISMISS**

1.     Defendants ask the Court to dismiss Plaintiff's case on the following alleged grounds:  lack of personal jurisdiction (Cadle and Diamond only); lack of subject matter jurisdiction; lack of standing; and failure to state a claim.  Plaintiff's Second Amended Complaint should not be dismissed for the reasons stated herein.

2.     In Defendants' Motions, they are correct that the claims that Plaintiff makes against Defendants herein arose out of a state court garnishment initiated by Defendants.

Importantly, Plaintiff also complains of Defendants actions surrounding the garnishment, including those leading up to the garnishment as well as those subsequent thereto. Indeed, Defendants have a pattern or practice of violating both federal and Texas consumer protection statutes, before, at the time of the garnishment, and afterwards. These wrongful acts are particularly harmful to senior citizens, such as the Plaintiff who is 87 years old. A review of Plaintiffs' complaint will show that this is not the first time one or more of the Defendants have been sued for violating state and/or federal consumer protection laws. These repeated and persistent actions by the Defendants are not accidents, rather, they are the very types that are maintainable and suitable for prosecution in this federal jurisdiction, and as a class action.

3.     Because Plaintiffs' personal claims herein **began** with the events leading up to the garnishment action (e.g., the invasion of right to privacy), Defendants' chronology of the litigation between Plaintiff and Cadle which began in the early 1990s is largely irrelevant and is only being used by Cadle herein to attempt to prejudice the Court and have the Court abstain from accepting jurisdiction. Of the four lawsuits described by Defendants as the First Lawsuit, Second Lawsuit (Revival), Third Lawsuit (Collateral Attack), and Fifth Lawsuit (Bill of Review), the only relevant fact applicable to this federal case is that Cadle presently has a judgment against Bray for which it has sought the post-judgment garnishment described above. However, it is possible that during the pendency of this federal action the First Court of Appeals may rule in Plaintiff's favor on its bill of review, and if it does so then Cadle's judgment would be rendered un-revived, the garnishment would be deemed invalid, and enforcement thereunder would be barred; however, that is not a factor upon which any of

Plaintiff's claims made herein presently rely.

4.     With regards to the Fourth Lawsuit (Garnishment) as described by Defendants in their Motions, events have occurred in Cadle's state court garnishment action <u>after</u> Defendants filed their Motions, which must be addressed in this response.  As previously reported to the Court during the last status conference, Plaintiff filed a motion for summary judgment in the state court garnishment action seeking to have the garnishment dissolved and Plaintiff's funds returned to him.   On June 15, 2010, Judge Cagle, Presiding Judge of Harris County Civil Court at Law No. 1, granted Bray's motion for summary judgment dissolving Cadle's writ of garnishment, and ordering all of the garnished funds released to Plaintiff.  See Bray's motions for summary judgment without exhibits, <u>Exhibit A</u>.  See June 15th Order attached as <u>Exhibit B</u>.   Cadle has since filed a Notice of Appeal, and an application for writ of mandamus seeking to prevent Plaintiff's garnished funds from being released to him, <u>despite the fact that Cadle admitted in its response to Bray's motion for summary judgment that part of the garnished funds were Social Security funds</u> (although the exact amount was in dispute depending upon the method used to trace the funds).  *See* Response, <u>Exhibit C</u>, at ¶ 5. Cadle's response specifically requested that the court "hold that Bray is entitled to receive $6,786 of the funds presently deposited in the Court's registry."  Despite this admission, Cadle has since appealed and sought a writ of mandamus from the court of appeals preventing Plaintiff from receiving any of his Social Security funds.  This continuing use of the courts by Defendants is further reason to grant the injunctive relief sought herein to prevent Defendants from initiating garnishment actions in the future against the putative class

of elderly individuals upon whom Defendants prey.[1]

5.      Among other relief, this action seeks redress under the Fair Debt Collection Practices Act for Defendants' unfair and/or unconscionable means of collecting or attempting to collect the alleged debt from Plaintiff and others similarly situated, and seeks to have Defendants enjoined from garnishing protected Social Security funds in the future.  Such injunctive relief is allowed under FRCP 65, and is relief allowed a consumer under Tex. Fin. Code § 392.403(a)(1), and Tex. Bus. & Com. Code § 17.50(b)(2).

6.      In this federal Complaint, Plaintiff alleges that Defendants knowingly and intentionally garnished his bank account containing Social Security funds in violation of the Social Security Act, 42 U.S.C. § 407(a), the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Texas Debt Collection Act, Texas Finance Code Chapter 392 ("TDCA" or "DCA"), and the Texas Business & Commerce Code, Subchapter E, Chapter 17 ("DTPA").  Plaintiff also alleged common law torts of abuse of process and invasion of right to privacy.  Plaintiff is seeking actual, statutory, and punitive damages.  In the interest of brevity, Plaintiff respectfully refers the Court to his Second Amended Original Complaint ("Complaint") for a detailed description of the Plaintiff's claims.   To better illustrate the changes between Plaintiff's First Amended Complaint and his Second Amended Complaint, Plaintiff has attached as Exhibit D, a redline version showing the changes made.

7.      In his Second Amended Complaint (the "Complaint"), Plaintiff provides three grounds for this Court's jurisdiction:  First, there is subject matter jurisdiction over Plaintiff's

---

[1] Defendants' allegation that the Anti-Injunction Act should apply to prevent this relief is invalid because Plaintiff's requested injunctive relief does not seek to enjoin enforcement of a state court proceeding or judgment/order, rather, it only seeks to prevent Defendants from initiating new garnishment actions that

federal Fair Debt Collection Practices Act ("FDCPA") claims. For example, in his Complaint at ¶¶ 55-62, Plaintiff alleges, inter alia, that Defendants violated 15 U.S.C. § 1692f(1) and (6) by using an unfair and/or unconscionable means to collect or attempt to collect the alleged debt from Plaintiff. *Id*. at ¶ 57. Second, there is subject matter jurisdiction over Plaintiff's declaratory judgment action relating to Section 407(a) of the Social Security Act, 42 U.S.C.A. § 407(a).[2] Third, the Court has jurisdiction because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 110 S.Ct. 1015, 1017 (1992).[3]

8. It is important to note that other than this federal case, there are no cases pending in any trial or appellate court dealing with the claims for relief being sought by Plaintiff in this case. In fact, of the five cases listed by Defendants, only the Fourth Lawsuit (Garnishment) has any facts that relate to Defendants' acts or omissions made the basis; moreover, in that proceeding, Plaintiff was <u>only</u> seeking to have the garnishment dissolved and his garnished funds released. In the garnishment action, Plaintiff never sought damages

---

would garnish social security funds in the bank accounts of class members, including Plaintiff.

[2] For declaratory judgment purposes, the district court must first assume hypothetically that the declaratory-judgment defendant had filed suit; then it must determine 1) if such a suit would arise under federal law or (2) if some element of that claim would necessarily depend on the resolution of a substantial, disputed question of federal law. *City of Huntsville*, 24 F.3d 169, 172 (11th Cir. 1994). If either is true, there is federal question jurisdiction. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16, 103 S.Ct. 2841, 2850 (1983). Here, there is no question that if Defendant had filed the suit first, the suit would arise under 42 U.S.C.A. § 407(a) or some element of the claim would necessarily depend on the resolution of whether Defendants had violated 42 U.S.C.A. § 407(a) by garnishing Plaintiff's bank account containing Social Security funds.

[3] The Complaint alleges facts that show that Plaintiff is not a citizen of the same state as any defendant. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17 (1941). In a class action in which jurisdiction is not based on 28 U.S.C. 1332(d), only the citizenship of the named parties or class representative is considered. *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1059 (1969). Here, the citizenship of the named parties is completely diverse, and the amount in controversy is over $75,000. In their current motion to dismiss, Defendants no longer challenge Plaintiff's pleadings on diversity jurisdiction grounds.

or any injunctive relief. In summary, there are not now nor have there ever been any proceedings in state court seeking any of the relief sought herein, and Defendants have made no claim or presented any evidence to the contrary. Thus, Plaintiff respectfully submits that the Court should not abstain.

9.      Additionally, all of the actions in state court have been in the Harris County Civil Courts at Law, and <u>none</u> of these courts have the monetary jurisdictional limits sufficient for Plaintiffs' claims to be pursued therein since the jurisdictional limit of Harris County Civil Courts at Law is $100,000 (excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs). *See* Texas Government Code §§ 25.0003. In addition, it has been opined thatTexas state courts are now an inadequate forum for maintaining a class action;[4] therefore, federal court jurisdiction is necessary to efficiently and economically provide the class a remedy against Defendants' actions.

## II. RESPONSE TO DEFENDANTS' GROUNDS FOR MOTION TO DISMISS

10.     **Rule 12(b)(1); Mootness**. Defendants seek dismissal under 12(b)(1) alleging mootness,on the basis that Defendant Cadle has now obtained the issuance of a bond under Texas Finance Code Sec. 392.101. However, the gravamen of Plaintiff's Complaint regarding the bond is that a "third party debt collector" (such as Defendants) is prohibited from engaging in debt collection in this state unless the "third party debt collector" has a bond. *Id*. Defendants are "third party debt collectors" as defined under Texas and Federal law. See discussion at ¶¶ 36 and 45, infra. At no time relevant to this suit did Defendants have a bond issued in compliance with Section 392.101, including, without limitation, at the

---

[4] See May 2009 edition of the Texas Bar Journal contains an article titled "In Memoriam: Texas Class

time that time that the garnishment occurred.  Defendants contends that Plaintiff's claims under Section 392.101 are moot because Cadle obtained a bond on January 11, 2010; however, all of the acts or omissions of Defendants that form the basis of Plaintiff's complaint occurred before the bond was obtained and at a time when Defendants were prohibited from engaging in debt collection activities in Texas.  The only relief requested in Plaintiff's Complaint that might in any way be affected by Cadle's obtaining a bond is the injunctive relief requested to prohibit Cadle from engaging in debt collection activities without a bond. Notably, only Cadle obtained a bond even though the individual defendants are also considered "third part debt collectors" and are required to have a bond.; therefore, injunctive relief for failure to have a bond is still sought against the individual defendants. See discussion at ¶¶ 37-38, infra.   The other injunctive relief requested by Plaintiff is not solely dependent upon a bond, but is based upon violations of the TDCA and DTPA, as more fully described herein and in the Complaint, which statutes allow for injunctive relief.  See Tex. Bus. & Com. C. § 17.50(b)(2) and Tex. Fin. C. § 392.403(a)(1).  In summary, Plaintiff's claims under Section 392.101 of the Texas Finance Code are not moot, and the violations thereof by Defendants are actionable under the TDCA and DTPA.  See further discussion at ¶ 30, infra.

11.    **Rule 12(b)(1) and 12(b)(6); Consumer Status**.   Defendants seek dismissal under 12(b)(1) and 12(b)(6) alleging that Plaintiff did not plead facts sufficient to qualify him as a "consumer" under the DTPA.  (Note that Defendants' attack on Plaintiff's pleadings as to his consumer status is now limited to only Plaintiff's DTPA claims, and no longer attacks

Actions" by Alistar B. Dawson and Geoff A. Gannaway.

Plaintiff's pleadings on consumer status under the FDCPA or TDCA.) Defendants erroneously fail to give effect to Section 392.404 of the Texas Finance Code with gives consumers under the TDCA the right to remedies under DTPA. More specifically, Plaintiff's consumer status is dependent upon the definition of consumer under Texas Finance Code § 392.001, which Plaintiff satisfies. In order for Plaintiff to be a consumer under Section 392.001, Plaintiff's debt at issue must be a consumer debt, which is defined as an "obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Plaintiff did plead that the underlying loan transaction was for personal or household purposes. See Complaint at ¶¶ 2 and 11. However, Defendants rely upon the definition of "consumer" as provided under the DTPA, without taking into consideration both statutes upon which Plaintiff relief sought under the DTPA is dependent. More specifically, as a consumer under the Texas Debt Collection Act (Finance Code § 392.001 et seq.) , Plaintiff is entitled to sue for the remedies available under the DTPA. See Texas Finance Code Sec. 392.404, harmonized with Tex. Bus. & Com C. Section 17.50(h); more fully discussed below at ¶¶ 31 and 32. Therefore, Plaintiff has properly pled a DTPA claim and has standing to do so.

12.    **Rule 12(b)(2); Lack of Personal Jurisdiction over Individual Defendants**. Defendants seek dismissal of the individual defendants on the allegation that they lack sufficient contacts with the State of Texas offending traditional notions of fair play and substantial justice. Defendants claim that all of the activities about which Plaintiff complains were conducted by the individual defendants while they were in Ohio. It may be true that these defendants did not actually come to Texas to personally garnish Plaintiff's bank

account containing Social Security funds (only discovery will reveal the truth about this assertion), but their physical presence in Texas is not necessary in order for sufficient contacts to exist or to be properly pled or established. Plaintiff did sufficiently plead facts showing that the individual defendants have sufficient contacts that do not offend traditional notions of fairness. See Complaint at ¶¶ 14-21, 32, 35-41. At all times relevant, the individual defendants were engaged in debt collection activities in Texas and these debt collection activities occurred without a bond as required under Tex. Finance Code § 392.101; therefore, the individual defendants should have reasonably anticipated being hailed into Texas courts for violating debt collection laws affecting citizens of the State of Texas. For further discussion on this issue, see ¶¶ 39-48, infra. In the alternative, Plaintiff respectfully requests that Plaintiff be allowed to take the depositions of Messrs. Cadle and Diamond, with a subpoena duces tecum, before the Court rules on Defendants' motion to dismiss these individual defendants on personal jurisdictional grounds.

13. **Rule 12(b)(2); Anti-Injunction Act and Declaratory Relief**. The Anti-Injunction Act states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Plaintiff's Complaint is not seeking injunctive relief to stay any state court proceeds. Nothing in the Complaint should be so construed. Plaintiff's Complaint only seeks to enjoin Defendants from future conduct that would violate the TDCA, the DTPA or the protections of the Social Security Act Section 407(a). Plaintiff's Complaint plainly asks to have conduct and practices of Defendants complained of herein enjoined as allowed under Texas Business

& Commerce Code § 17.50(b)(2) or as may otherwise be allowed by law (e.g., Fin. Code § 392.403(a)(1). See Complaint, ¶¶ 45, 70(b), and 79. Section 392.403(a)(1) allows a party to sue for "injunctive relief to prevent or restrain a violation of this chapter;" and section 17.50(b)(2) simply allows a consumer who prevails to obtain "an order enjoining such acts or failure to act." If the Defendants' acts violated the TDCA or DTPA, then Plaintiff is entitled to injunctive relief as provided by those statutes. In addition, FRCP 65 should allow this Court to give meaning to the Social Security Act, 42 U.S.C. § 407(a), which protects Social Security benefit funds from "execution, levy, attachment, garnishment, or other legal process." For further discussion, see ¶ 49-56, infra.

14. **Rule 12(b)(6); Invasion of Privacy and Abuse of Process**. Defendants argue that Plaintiff has failed to state a common law claim of invasion of his right to privacy or abuse of process. However, Plaintiff has plainly stated a claim for each of these common law causes of action. See Complaint at ¶¶ 26-28, 46-50. See O'Connor's Texas Causes of Action, 2008, Chapter 15-A; and Chapter 2 §6.6. For further discussion, see infra, at ¶¶ 51 through 56.

15. **Rule 12(b)(6); Garnishment**. Defendants assert that Plaintiff fails to state a claim because his complaint is about the "mere use of a state court garnishment," and that such use does not violate the FDCPA or constitute an unfair or unreasonable debt collection effort. However, Defendants' state court garnishment action was prohibited by Section 407(a) of the Social Security Act, and Defendants initiated it while lacking capacity or authority to do so under the TDCA by failing to have a bond. Certainly these actions constitute an unfair and unreasonable debt collection activity. See further discussion, infra,

at ¶¶ 49-56. In addition, Judge Cagle's Order dissolving Cadle's garnishment (Exhibit B) and granting Plaintiff's motions for summary judgment (Exhibit A), are a *res judicata* bar to any claim by Defendant that their garnishment was proper.

16.  **Rule 12(b)(6); State Law Predominance**. Defendants argue that Plaintiff's claims should be dismissed because they allege that state law issues predominate under federal law issues. Plaintiff contends that the federal issues in this case are substantial and predominate over the state law issues because Plaintiff's claims arose from the Defendants' garnishment of Plaintiff's Social Security funds, which is prohibited under the Social Security Act, 42 U.S.C.A. § 407(a), and the events and acts of Defendants surrounding same. Defendants' first two paragraphs of their Motion confirm that this is the core of Plaintiff's Complaint.

17.  **Colorado River Abstention Doctrine**. Defendants also argue that the Court should abstain, citing the *Colorado River* abstention doctrine. As stated previously, there are no actions pending in the state trial courts at this time, now that Judge Cagle has entered his June 15th Order dissolving the writ of garnishment. The June 15th Order is a *res judicata* bar to many of Defendants' alleged defenses. Defendants argue that extraordinary circumstances exist for abstention because another court has assumed jurisdiction over the garnished funds; however, this federal case does not seek any relief as to who should possess the garnished funds and in any event that matter has been resolved by the June 15th Order. Moreover, as stated above, the state courts are inadequate for pursuing a class action. See footnote 2. Defendants' argument that there has been other litigation in state court is a red herring; these cases relate to whether the debt or judgment is valid, which is not an issue in this case.

Plaintiff's primary attack on Cadle's garnishment relies on the Social Security Act and its prohibition against garnishing Social Security benefit funds.[5]  Plaintiff respectfully avers that the Court should not abstain.

18.    **Rule 12(d); Motion for Summary Judgment**.  Although Plaintiff believes that Defendants' motion should be denied as a motion to dismiss under Rule 12(b)(6), should the Court be inclined to consider treating Defendants' motion as a motion for summary judgment, Plaintiff contends that the evidence attached hereto is sufficient to defeat any such motion.  Alternatively, Plaintiff would request an adequate opportunity to conduct discovery and provide a further response before the Court rules on any treatment of Defendants' motions as a motion for summary judgment.

## III.  ADDITIONAL BRIEFING AND LEGAL ANALYSIS

### A.  LEGAL STANDARD FOR A MOTION TO DISMISS

19.    **Rule 12(b)(1)**.  In ruling on a motion to dismiss for lack of subject matter jurisdiction, courts may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the courts resolution of disputed facts. *See Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001) (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)). A court must accept all factual allegations in the plaintiff's complaint as true. *Id.*  A court "properly dismisse[s] a case for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992).  Courts should accept as true

---

[5] Of course, now that Judge Cagle has entered his June 15th Order, Plaintiff will also rely upon *res*

all well-pleaded allegations in the complaint, and view them in a light most favorable to the plaintiff. *Tanglewood E. Homeowners v. Charles-Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir.1988). Further, a court should grant a motion to dismiss only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998) (applying standard in context of Rule 12(b) (1)). While enjoying broad discretion in handling Rule 12(b) motions to dismiss, courts should make certain that plaintiffs are not improperly denied the right to have claims adjudicated on the merits. *Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 926 (5th Cir.1988) (noting that "the standard for dismissing a complaint is very high.").

20.      **Rule 12(b)(2).** A nonresident defendant is subject to personal jurisdiction in this district if: (1) he is amenable to service of process under Texas's long-arm statute, and (2) the exercise of personal jurisdiction over him is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.,* 234 F.3d 863, 869 (5th Cir.2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business" in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.042. The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.1993); *Williams v. Castro,* 21 F.Supp.2d 691,

---

*judicata* as a bar to Defendant's claims contrary thereto.

692 (S.D.Tex.1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356-57 (Tex.1990).

21.     Whether the exercise of personal jurisdiction over Defendant is consistent with the Due Process Clause of the United States Constitution requires a two-pronged inquiry. First, the Court must conclude that Defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendant to litigate in this forum does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.1994); *Ruston Gas Turbines,* 9 F.3d at 418.

22.     The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Sarmiento v. Producer's Gin of Waterproof, Inc.,* 439 F.Supp.2d 725, 730-31 (S.D.Tex.2006).

23.     The "minimum contacts" prong can be satisfied by finding either general or specific jurisdiction over Defendant. *See Wilson,* 20 F.3d at 647. A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Id.* at 647, 650-51. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines,* 9 F.3d at 419 ("A single act by the defendant

directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)). A defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (citing *World-Wide Volkswagen Corp. v. Woodson,* 44 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed. 490 (1980)).

24.     Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson,* 20 F.3d at 648. However, it is sufficient for the plaintiff to make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 785 (5th Cir.1990); *Guyton v. Pronav Ship Mgmt., Inc.,* 139 F.Supp.2d 815, 818 (S.D.Tex.2001).

25.     Under *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 628 (5th Cir.1999) (citing *Calder,* 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). As described in *Mullins v. TestAmerica, Inc.*, 564 F.3d at 400:

26.     *Calder* involved a suit brought by a California actress in a California state court against two Florida employees of a tabloid magazine based on an allegedly libelous article featured in one of its issues. 465 U.S. at 785-86, 104 S.Ct. 1482. The Supreme Court concluded that the defendants, who wrote and edited the article, knew that its injurious effects would be felt by plaintiff in California and had therefore "expressly aimed" their intentional and allegedly tortious conduct at the forum state. *Id.* at 789-90, 104 S.Ct. 1482. Critically, the focal point of the article itself was also California, since it was drawn primarily from California sources and pertained to an actress whose career was centered in California. *Id.* at 788-89, 104 S.Ct. 1482. Thus, "[t]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir.2001) (per curiam) (internal quotation marks and citation omitted). . . . The "effects" test in *Calder* does not supplant the need to demonstrate minimum contacts that constitute purposeful availment, that is, conduct by the non-resident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state resident. *See id.* at 869.  . . . Under *Calder,* however, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction." *Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir.2002).

27.     It is well established that jurisdiction over an individual defendant cannot be predicated on that individual's contacts with the forum state in his corporate representative capacity. *Davey v. Shaw,* 225 S.W.3d 843, 856 (Tex.App.-Dallas 2007, no pet.). However, a corporate officer is not protected from the exercise of specific personal jurisdiction if the

officer engaged in tortious or fraudulent conduct directed at the forum state for which he may be held individually liable. *Greenfield Energy, Inc. v. Duprey,* 252 S.W.3d 721, 732-33 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citations omitted); *Barnhill v. Automated Shrimp Corp.,* 222 S.W.3d 756, 768 (Tex.App.-Waco 2007, no pet.). Further, this doctrine applies to the exercise of general jurisdiction, not specific. *Id.* (citing *Brown v. Gen. Brick Sales Co.,* 39 S.W.3d 291, 300 (Tex.App.-Fort Worth 2001, no pet.)).

28.     **Rule 12(b)(6).** Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are disfavored.  Similar to a common law demurrer, a Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint.  A motion to dismiss under Rule 12(b)(6) is not appropriate unless the plaintiff's pleadings on their face show, beyond a doubt, that the plaintiff cannot prove any set of facts that would entitle him to relief.  *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002); *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002).

29.     When considering a Rule 12(b)(6) motion to dismiss, the Court must accept the allegations in the Complaint as true.  See *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  When a plaintiff's allegation of the amount in controversy is challenged, the court should provide the plaintiff an opportunity to present facts by affidavit or deposition or in an evidentiary hearing to prove its amount in controversy. [6]  *Suber v. Chrysler Corp.*, 104 F.3d 578, 584 (3d Cir. 1997).  In an action seeking injunctive relief, the amount in controversy is usually measured by the value of the right sought to be protected by the equitable relief.  *Hunt v. Washington*

---

[6] With this response, Plaintiff makes a ***conditional*** motion to allow Plaintiff additional time to provide an affidavit, deposition or evidentiary hearing to prove more fully the extent of the mental anguish injury to Plaintiff and that his mental anguish damages alone are in excess of $75,000.00.  The motion will be

*State Apple Adver. Comm.*, 432 U.S. 333, 345, 97 S.Ct. 2434, 2443 (1977). In an action

seeking declaratory relief, the amount in controversy is measured by the value off the object

of the litigation or the extent of the injury to be protected. *Hartford Ins. Group v. Lou-Con*

*Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

### B.  LEGAL ANALYSIS OF RULE 12(b)(1) MOTION OF THE CADLE COMPANY

#### Rule 12(b)(1) and Defendants' mootness claim about the bond

30.    Defendants argue that Plaintiff's claim is moot because Cadle posted the bond

required by Section 392.101 of the Texas Finance Code. Cadle's argument that Bray's lack

of bond claim is moot because "Bray suffered no damages . . . because there has been no

finding of liability in favor of Bray and against Cadle," is nonsensical. Section 392.101

plainly prohibits a third party debt collector from engaging in debt collection in this State

without a bond. Plaintiff's bank account would not have been garnished by Cadle but for

Defendants' violation of this law.  The same applies to all other persons similarly situated.

Judge Cagle's dismissal of Cadle's garnishment supports this position, because Plaintiff's

motion for summary judgment was, in part, on the ground that Cadle lacked capacity to

initiate the garnishment proceeding because it lacked a bond. See Bray's Second Motion for

Summary Judgment, <u>Exhibit D</u>.

#### Rule 12(b)(1) and Defendants' argument that Bray lacks standing to a assert DTPA claim

31.    Defendants cite two cases (one quoting the other) for the proposition that Bray

lacks standing to bring a DTPA claim because Bray's claim is based on a loan transaction

---

conditional in the sense that plaintiff will only seek to have the motion heard if the court views the proof filed

and the DTPA defines a consumer as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." Although these cases do appear to conclude that a borrower may not maintain a DTPA claim based upon his loan transaction, the courts failed to properly analyze the issues and erred in their conclusions, for purposes of applying the issues to the facts in these types of cases.

32. To properly decide this issue, Tex. Bus. & Com C. Section 17.50(h) must be carefully reviewed for its intended purpose and harmonized with Texas Finance Code Sec. 392.404. Tex. Bus. & Com C. Section 17.50(h) states:

> "(h) **Notwithstanding any other provision of this subchapter**, if a **claimant** is granted the right to bring a cause of action under this subchapter by another law, the **claimant** is not limited to recovery of economic damages only, but may recover any actual damages incurred by the **claimant**, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages. In applying Subsection (b)(1) to an award of damages under this subsection, the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

[Emphasis added.] Texas Finance Code Sec. 392.404, which states:

> REMEDIES UNDER OTHER LAW. (a) A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and **is actionable under that subchapter**.
>
> (b) This chapter does not affect or alter a remedy at law or in equity otherwise available to a debtor, creditor, governmental entity, or other legal entity.

[Emphasis added.] Clearly, Section 392.404 **does not** say that it is actionable under Subchapter E *only if* the consumer under the Texas Debt Collection Act also qualifies as a consumer under Subchapter E (the Texas Deceptive Trade Practices Act). And notably,

with this response insufficient to satisfy the Court that the amount in controversy is in excess of $75,000.

19

Section 17.50(h) refers to a "claimant" -- it does not say "consumer". That can only be interpreted to mean that the Legislature anticipated that other laws may allow for remedies under the DTPA even though the claimant is not a "consumer" as that term is defined under the DTPA. That is obviously why Section 17.50(h) begins with "Notwithstanding any other provision of this subchapter". If this were not the case, the remaining language of Section 17.50 would preclude a remedy for a violation of the Texas Debt Collection Act ("TDCA") because the violation under the Texas Debt Collection Act is not listed under Section 17.47(b). Therefore, to construe Section 17.50 without taking the foregoing into consideration would leave no action available for a TDCA consumer under the DTPA, rendering Section 392.404 meaningless. Plaintiff has properly pled a DTPA claim and has standing to do so, because as a consumer under the TDCA, Plaintiff is entitled to sue for the remedies available under the TDTPA "notwithstanding any other provision of [the TDTPA]."

## C.    LEGAL ANALYSIS OF RULE 12(b)(6) MOTION OF THE CADLE COMPANY

### Rule 12(b)(6) and the Fair Debt Collections Practice Act (FDCPA), Texas Debt Collection Act, and Texas Deceptive Trade Practices Act

33.    Plaintiff plainly states in paragraph 11 of his Complaint that the subject loan was a *personal and household purposes*. A "consumer" is one who has a consumer debt. Texas Finance Code § 392.404(1). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Texas Finance Code § 392.404(2). Plaintiff is a "consumer" because his debt is a consumer debt. The loan was a personal loan made to Plaintiff, individually (Exhibits 1 and 7); therefore, it is a consumer debt. See *Monroe v.*

*Frank,* 936 S.W.2d 654, 656 (Tex.App.--Dallas 1996, no writ). The averments that Plaintiff's alleged debt to Cadle Co. was a consumer debt are specifically made in paragraphs 2, 9, 11 and 40 of the Complaint.

34.     As further support for the debt being a consumer debt, attached is a certified copy of Plaintiff's affidavit dated March 2, 1992, as filed with the Harris County Clerk, which shows that Plaintiff has been semi-retired since 1989, and that the promissory note evidences a loan made to Plaintiff individually.[7] See <u>Exhibit 7</u>. It is neither a business nor a commercial loan. The affidavit also shows that by letter dated February 4, 1991, Plaintiff informed Defendants that his "financial position has continued to deteriorate to the point of no available assets or dependable income other than Social Security."[8] See <u>Exhibit 7</u>. The affidavit further authenticates a letter that Plaintiff received from The Cadle Company to Plaintiff dated January 17, 1991, which states "Please read the accompanying notice, which we provide in compliance with ***the Fair Debt Collection Practices Act***." (Emphasis added.) Plainly, Defendants have known from the beginning that the loan that The Cadle Company purchased was a consumer loan subject to the Fair Debt Collection Practices Act. The Cadle Company's responses to request for admissions numbers 2, 6 and 7, also attached to <u>Exhibit 7</u>, admit the authenticity of the January 17, 1991 letter, and that the person signing the letter was an authorized officer, agent, servant or employee of The Cadle Company.

35.     In addition, letters sent by The Cadle Company in 2008 and 2009 to Plaintiff's attorney regarding the alleged debt also contained the required FDCPA disclosure. See

---

[7] The purpose of using the affidavit from Cause No. 579,602, is not in any way a collateral attack on the judgment of the County Court at Law No. 1, Harris County, Texas, nor are any of the arguments made herein.

[8] Despite having this information in their possession since 1991, Defendants completely disregarded this information and garnished Plaintiff's bank account containing his Social Security funds on February 12,

<u>Exhibit 4</u> and <u>Exhibit 5</u>. Specifically, the 2008 and 2009 letters state, in relevant part, as follows:

> In accordance with ***15 U.S.C. 1692e(11)***, please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose.

(Emphasis added.)  15 U.S.C. §1692e(11) is part of the FDCPA, and provides as follows:

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

It is not only disingenuous for Defendants to claim that Plaintiff's alleged debt is not a consumer debt and that Plaintiff is not a consumer, but it is also a violation of Texas Finance Code § 392.304(a)(8) to misrepresent the consumer debt's status in this proceeding; it is particularly egregious considering that they have been repeatedly representing the status of the debt as a ***consumer debt*** for 18 years.

36.  The Cadle Company has been found by other courts to be a "debt collector" as that term is defined by 15 U.S.C. Section 1692a(6).  See *D.A.N. Joint Venture III, L.P. v. Armstrong*, 2007 WL634457 (Ohio App. 11 Dist. 2007) (The Cadle Company stipulated that it was a "debt collector" for the purposes of the Fair Debt Collections Practices Act); *Cadle Company v. Schlichtmann*, 123 Fed. Appx. 675, 2005 WL 293666 (6th Cir. 2005) (Cadle Company is an Ohio-based debt collector.); see also <u>Exhibit 10</u>.  *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 501 (7th Cir. 2008) is a leading case on whether an owner of a

---

2008.

debt is considered a "debt collector" under Section 1692a(6). Cadleway Properties, Inc. is an affiliate of The Cadle Company. In *McKinney*, the court reasoned as follows:

> We have held that "[f]or purposes of applying the Act to a particular debt, these two categories-debt collectors and creditors-are mutually exclusive." *Schlosser,* 323 F.3d at 536. We have also observed, however, that "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category." *Id. Schlosser* noted that in such a case-one involving a debt originated by another and subsequently acquired by the entity attempting collection-"the Act uses the status of the debt at the time of the assignment" to distinguish between a debt collector and a creditor. *Id.*

> The Act draws this distinction in a rather indirect way, however-by the *exclusionary* language, quoted above, in the statutory definitions of creditor and debt collector. That is, the definition of creditor excludes those who acquire and attempt to collect a "debt *in default,*" § 1692a(4) (emphasis added), while the definition of debt collector excludes those who acquire and attempt to collect "a debt which was *not in default* at the time it was obtained," § 1692a(6)(F) (emphasis added). So one who acquires a "debt in default" is categorically *not* a creditor; one who acquires a "debt not in default" is categorically *not* a debt collector.

> Thus, we held in *Schlosser* that the Act "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." 323 F.3d at 536; *see also Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 387 (7th Cir.1998) ("The plain language of § 1692a(6)(F) tells us that an individual is not a 'debt collector' subject to the Act if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."). We explained that "[f]ocusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute," which generally covers debt collection, not debt servicing:

>> For those who acquire debts originated by others, the distinction drawn by the statute-whether the loan was in default at the time of the assignment-makes sense as an indication of whether the activity directed at the consumer will be servicing or collection. If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.

> *Schlosser,* 323 F.3d at 538. Accordingly, the purchaser of a debt in default is a
> debt collector for purposes of the FDCPA even though it owns the debt and is
> collecting for itself. *Id.* at 538-39; *see also FTC v. Check Investors, Inc.,* 502
> F.3d 159, 171-74 (3d Cir.2007) (holding that an entity engaged in collection
> activity on a defaulted debt acquired from another is a "debt collector" under
> the FDCPA even though it "may actually be owed the debt").

In the instant case, The Cadle Company acquired Bray's consumer debt when it was in default. See *Bray v. Cadle Company*, 880 S.W.2d 813, 815 (Tex. App. – Houston [14th Dist., writ denied). Therefore, since The Cadle Company has been found by other courts to be a "debt collector" as that term is defined by 15 U.S.C. Section 1692a(6), and otherwise satisfies the requirements to be a "debt collector" under both section 1692a(6) of the FDCPA and Section 392.001(6) of the Texas Debt Collection Act, The Cadle Company satisfies the definition of a "third party debt collector" under Texas Finance Code §392.001.[9]

37.     As a "third party debt collector" under Texas Finance Code §392.001(7), The Cadle Company is required to have a bond under Texas Finance Code §392.101.   Section 392.101(a) provided as follows:

> (a) A third-party debt collector or credit bureau *may not engage in debt*
> *collection unless the third-party debt collector* or credit bureau *has obtained a*
> *surety bond issued by a surety company authorized to do business in this*
> *state as prescribed by this section*. A copy of the bond must be filed with the
> secretary of state.

"Debt collection" is defined under Section 392.001(5) as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a

---

[9] Texas Finance Code § 392.001(6) defines "debt collector" as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts."  Section 392.001(7) defines "third party debt collector" as a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:  (A)  are regularly engaged to solicit debts for collection; or (B)  regularly make contact

creditor." Consequently, Cadle must have a bond before attempting to collect a consumer debt such as the alleged debt that Cadle claims that Plaintiff owes. However, **Cadle Company had no such bond.** See Affidavit of Thomas R. Bray; Exhibit 11. **Therefore, Cadle** was prohibited from **engaging in debt collection in the State of Texas during such periods of time before the bond was issued on January 11, 2010**. See Complaint at ¶¶ 29-32. All of Defendants debt collection activities complained of herein occurred while Defendants had no bond. By violating the Texas Debt Collection Act, Plaintiff is entitled to relief under Section 392.403(b) and 403(e) of the Texas Finance Code, as well under Tex. Bus. & Com. C. Subchapter E, Chapter 17. *See* Texas Finance Code § 392.404.

38.     Defendants have also violated Texas Finance Code § 392.304(a)(8) by misrepresenting in this proceeding that the alleged debt is not a consumer debt. Under 392.304(a)(8), the following practice is prohibited:

> misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding.

Since Plaintiff is a consumer and the alleged debt is properly classified as a consumer debt, Plaintiff is entitled to sue under the FDCPA and under Texas Finance Code § 392.403(a) for (1) injunctive relief to prevent or restrain a violation of Chapter 392, and (2) actual damages sustained as a result of a violation of Chapter 392. Section 392.403(b) provides that a person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs. Section 392.403(e) provides that a person who successfully maintains an action under this section for violation of Section

---

with debtors for the purpose of collection or adjustment of debts.

392.101 is entitled to not less than $100 for each violation of Chapter 392.  A violation of Chapter 392 is a deceptive trade practice for which Plaintiff is entitled to relief under Subchapter E, Chapter 17, Texas Business & Commerce Code.  Texas Finance Code § 392.404.

### D.   LEGAL ANALYSIS OF RULE 12(b)(2) AND (6) MOTIONS OF DANIEL C. CADLE AND RAY DIAMOND

39.     Defendants seek dismissal of Daniel C. Cadle and Ray Diamond under Rule 12(b)(2) on the alleged grounds that Plaintiff has "limited his claims against the individual Defendants to invasion of privacy and abuse of process, both of which are tort claims" and that "Bray did not plead allegations that would satisfy the Texas long arm statute." Defendants further allege that Plaintiff's allegations of individual conduct do not "satisfy the first prong of the purposeful availment test."  Defendants have incorrectly read Plaintiff's Complaint because Plaintiff has not limited his claims against the individual defendants to the common law torts of invasion of privacy and abuse of process.  Plaintiff has sued the individual defendants (who were included within the defined terms "Cadle" or "Defendants" in the introductory paragraph of Plaintiff's Complaint) under all of the causes of action in Plaintiff's Complaint.  Each of Plaintiff's causes of action seek relief from "Cadle" or "Defendants" and often refer to Daniel Cadle or Ray Diamond by name as well.  See Complaint, at ¶¶ 32, 36-40, which are incorporated into each of the causes of action.  The following will address Plaintiff's claims as to each of the causes of action asserted against Daniel Cadle and Ray Diamond.

### Rule 12(b)(2) and (6) and Daniel C. Cadle

40.     To establish an individual defendant's liability for FDCPA purposes, a plaintiff

must first establish that the defendant is a "debt collector." *See Musso v. Seiders,* 194 F.R.D. 43, 46 (D.Conn.1999). The FDCPA defines a debt collector as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). A "high ranking employee, executive or director of a collection agency may fit within the statutory definition of a debt collector." *Musso,* 194 F.R.D. at 46 (citing *Teng v. Metropolitan Retail Recovery, Inc.,* 851 F.Supp. 61, 67 (E.D.N.Y.1994); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1336-37 (D.Utah 1997)). It is not enough to label a defendant a "debt collector"-the plaintiff must also allege that the defendant was personally involved in the collection of the debt at issue. *See, e.g., Musso,* 194 F.R.D. at 46-47; *Brumbelow v. Law Offices of Bennett and Deloney, P.C.,* 372 F.Supp.2d 615, 622 (D.Utah 2005); *Ditty,* 973 F.Supp. at 1336-1337 (supervisor of firm's collection activities and author of unlawful collection letters personally liable under the FDCPA); *Egli v. Bass,* 1998 WL 560270 *1, *2 (N.D.Ill.1998); *Pope v. Vogel,* 1998 WL 111576 *1, *5-6 (N.D.Ill.1998).

41.     In paragraph 14 of the Complaint, Plaintiff alleges as follows:

> Daniel C. Cadle is the Chief Executive Officer, director and controlling shareholder of Cadle Co.  Thus, Mr. Cadle is ultimately responsible for the decisions made by Cadle Co. and constitutes Cadle Co.'s executive management.  On information and belief, Mr. Cadle either made the decision to garnish Plaintiff's Social Security funds, or ratified or approved the decision by Ray Diamond to garnish Plaintiff's Social Security funds.

Plaintiff's Complaint, plainly states, in relevant part, that 1) Plaintiff's bank account was opened by Plaintiff in Houston, Harris County, Texas, 2) Plaintiff was prevented in Harris County, Texas from using his funds in the account, 3) Plaintiff's Compass Bank Funds

contained, in part, Social Security funds received by Plaintiff from the United States Treasury, 4) Cadle wrongfully garnished Plaintiff's Social Security funds, 5) Defendants had been informed and were aware that Plaintiff's Compass Bank Funds contained Social Security funds, 5) Plaintiff made demand upon Cadle to immediately cause Plaintiff's Social Security funds to be released from the effect of the garnishment, 6) despite being provided verified documentation showing that the garnished account contained Plaintiff's Social Security funds, and despite Plaintiff's demand, Defendants failed and refused to cause Plaintiff's take Social Security funds to be released from the effect of the garnishment, and such Social Security funds remain unavailable to Plaintiff, and 7) since the garnishment, Plaintiff has been prevented from accessing any of his Compass Bank Funds, including, but not limited to, his Social Security funds. These allegations are sufficient for purposes of stating a claim against Daniel C. Cadle, and for the purpose of conferring personal jurisdiction over Mr. Cadle. These allegations, taken as true, are sufficient to withstand a motion to dismiss. *See Musso,* 194 F.R.D. at 47 (defendant knew of and ratified allegedly unlawful practices); *Brumbelow,* 372 F.Supp.2d at 622 (defendants developed and implemented allegedly unlawful practices); *Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349, 355-356 (D. Mass. 2008). Daniel Cadle's statement in his supplemental affidavit that he was not present in Texas when The Cadle Company made its bid to purchase Plaintiff's loan from the FDIC is insufficient for defeating personal jurisdiction over Mr. Cadle, because he plainly knew that the loan was a consumer loan and by initiating the garnishment action (from Ohio or wherever else he might have been at the time), the garnishment and injury to Plaintiff was going to occur in the State of Texas. Here, Mr. Cadle directed his company, The Cadle Company, to garnish Plaintiff's

bank account containing Social Security funds in violation of Federal law, and to engage in debt collection in the State of Texas without having a certificate of authority from the Texas Secretary of State (Exhibit 13), or a debt collector's bond (Exhibit 11) allowing them to do so. Since the State of Texas requires all "third party debt collectors," such as Daniel Cadle and Ray Diamond, to have a bond before engaging in debt collection activities in the State of Texas, surely they should have reasonably anticipated being haled into court in Texas.

42.     The Cadle Company's sworn answer to Interrogatory 5, part of Exhibit 7, states that The Cadle Company "purchased the Note January 4, 1991, as part of a bulk purchase of notes from the FDIC. . .", and answer to Interrogatory 7, wherein The Cadle Company swears that the note was acquired "through a sealed bid sale from the FDIC as seller *in Houston, Texas*, on January 4, 1991 . . ."  (Emphasis added.)  The purposes of noting that The Cadle Company acquired the note at a sealed bid sale *in Houston, Texas*, is to show the activity and contact that The Cadle Company and Daniel C. Cadle have had with the State of Texas for nearly 20 years.  In addition, Exhibit 8 and Exhibit 9 show that Daniel C. Cadle is the authorized signatory for two companies that transact and do business in Texas.

### Rule 12(b)(2) and (6) and Ray Diamond

43.     In the Complaint, Plaintiff states "Ray Diamond is an 'account officer' and employee of Cadle Co., and was the "account officer" assigned to Plaintiff's 'account' at Cadle Co."  In the Complaint, Plaintiff states:

> Ray Diamond made and/or executed the decision of Cadle Co., with the approval or ratification of Daniel C. Cadle.  However, despite being provided competent, sworn documentation that the funds contained in Plaintiff's garnished bank account included Plaintiff's Social Security funds, Mr. Diamond nevertheless wrote in a letter to Plaintiff's attorney that "Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the

funds." (No Emphasis added). To date, Cadle has failed and refused to cause the release of Plaintiff's Social Security funds.

These allegations are sufficient for purposes of stating a claim against Ray Diamond, and for the purpose of conferring personal jurisdiction over Mr. Diamond. As with Daniel Cadle, these allegations, taken as true, are sufficient to withstand a motion to dismiss. Furthermore, the Declaration of Maximo Caballero shows Mr. Diamond's sufficient minimal contact with the State of Texas, and further shows his violation of debt collection laws, including, the federal FDCPA. More specifically, seven months ago, Ray Diamond contacted Mr. Caballero and his wife, and told them that he was with The Cadle Company, a collection agency, and that he was gathering information about Plaintiff. He specifically asked them whether Plaintiff owned the home they were living in, or owned the note for the home. According to Mr. Caballero, he was abrupt, rude and aggressive in trying to get information from them. Mr. Diamond's contact with Mr. Caballero is a violation of the FDCPA.

44. Mr. Diamond also sent Ray Diamond's letter of July 22, 2008, wherein he defiantly ignored Plaintiff's demand (Exhibit 3) for the release of his Social Security funds, and responded "*Although Mr. Bray has provided alleged sworn evidence that the funds are Social Security funds, The Cadle Company absolutely disagrees for reasons that will not be argued in this letter but reserved for argument in front of the Judge. Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the funds*." (Exhibit 4) Mr. Diamond must have known that his defiance and refusal to cause the release of Plaintiff's Social Security funds would cause him to be haled into this forum.

45. To be liable under the FDCPA, a defendant must qualify as a "debt collector," which § 1692a defines as "any person who uses any instrumentality of interstate commerce ...

in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Federal Trade Commission Staff Commentary on the FDCPA[10] explains that this definition includes "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owed another." 53 Fed.Reg. 50102 (Dec. 13, 1998). The FDCPA expressly prohibits certain acts by *"any* person ... in *any* business." 15 U.S.C. § 1692a(6) (emphasis added). Without distinguishing between an employee's position within the corporation, the Staff Commentary also explains that "any person" includes an "employee of a *corporation.*" 53 Fed.Reg. 50102 (Dec. 13, 1988) (emphasis added). As the *Brumbelow* court explained, "[w]here Congress has chosen to use broad language, that language should be given its full effect no matter how sweeping." 372 F.Supp.2d at 619; *accord Pikes v. Riddle,* 38 F.Supp.2d 639, 640 (N.D.Ill.1998) ("[I]t is highly unlikely that Congress wished to restrict liability to the often small corporate vehicle used for collection, and the statutory language clearly brings all those personally involved within the ambit of 'debt collector.' "). Therefore, Daniel Cadle and Ray Diamond are debt collectors under the FDCPA and "third party debt collectors" under the Texas Debt Collection Act, and their tortious activities surrounding the garnishment action are a violation of the Texas Debt Collection Act and FDCPA, as are Mr. Diamond's communications with Maximo Caballero.

---

[10] A court " 'must give substantial deference to an agency's interpretation of its own regulations.' " *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1263 (9th Cir.1996) (quoting *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)). The court's " 'task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." ' " *Id.*

46.     A debt collector is allowed to communicate with third parties without needing to first obtain the borrower's permission only when the purpose of the communication is to obtain location information.  Communication can be either oral or written and is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium.  15 U.S.C. § 1692a(2).  "Location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(2).  Mr. Caballero's Declaration plainly shows that Mr. Diamond did not contact him to obtain location information.  The debt collector cannot state that the consumer owes any debt and may only have one contact with the third party. 15 U.S.C. § 1692b(3).  Further, once the debt collector has the consumer's home address and phone number or work address, its future activities do not fall within the location information criteria and any further contact is not permissible.  Once the debt collector knows that a consumer is represented by an attorney with respect to the debt and can easily ascertain the attorney's name and address, then the debt collector's ability to contact third parties for location information is terminated.

    15 U.S.C. § 1692b(3).  Here, Diamond already knew Plaintiff's place of abode. <u>Exhibit 12</u>.

47.     Postjudgment activities to collect an alleged consumer debt by a debt collector may constitute a violation of the FDCPA.  See *Taylor v. Heath W. Williams, L.L.C.*, 510 F.Supp.2d 1206, 1211 (N.D.Ga.,2007).  Therefore, the "mere use of a state court garnishment", as alleged by Defendants, does not provide them with immunity from FDCPA liability.  15 U.S.C. § 1692c(b) states "Except as provided in section 1692b[11] of this title, without the prior consent of the consumer given directly to the debt collector, or the express

---

[11] Section 1692b permits contact with third parties only to obtain location information.

permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  The Federal Trade Commission Staff Commentary[12] for Section 805(b)6 states that "The words "as reasonably necessary to effectuate a postjudgment judicial remedy" mean a communication necessary for execution or enforcement of the remedy. . . "   Mr. Diamond's communications with Mr. and Mrs. Caballero were not necessary for execution or enforcement of postjudgment judicial remedy.

<u>**Specific Jurisdiction Exists Over Cadle and Diamond**</u>

The allegations in Plaintiff's Complaint as described above satisfy the *Calder* "effects" test.  Both Cadle and Diamond engaged in tortious conduct directed at Bray in Plaintiff, and they may be held individually liable despite their employment with The Cadle Company. *See Greenfield Energy, Inc.  v. Duprey*  and *Barnhill v. Automated Shrimp*,  supra. To maintain this action in Texas would not offend traditional notions of fairness because to do otherwise would require Plaintiff, who is 87 years old, to maintain his action in Ohio even though Cadle and Diamond are enjoying the benefits of consumer debt collection activities in this State.   The "minimum contacts" prong is satisfied by finding specific jurisdiction over Cadle and Diamond, both of whom have purposefully availed themselves of the privilege of conducting activities in Texas.

### E.    LEGAL ANALYSIS OF PLAINTIFF'S CLAIMS RELATING TO THE

---

[12] http://www.ftc.gov/os/statutes/fdcpa/commentary.shtm;  see Appendix

## SOCIAL SECURITY ACT

48.     The Cadle Company's garnishment of Plaintiff's Social Security funds is a violation of the FDCPA.  In *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F.Supp.2d903 (S.D. Ohio 2004), the court ruled in favor of the debtor, concluding that under Ohio law a debt collector could have done a debtor's exam prior to garnishment to ascertain the nature of the funds in the account. In Texas, Rule 621a of the Texas Rules of Civil Procedure allows for such an exam.

49.     The U.S. Supreme Court has repeatedly rejected arguments that there are "implied exceptions" to Section 407(a) that would allow a state to erode federal protections afforded Social Security benefits.  See *Bennett v. Arkansas*, 485 U.S. 395, 108 S.Ct. 1204 (1988) (ruling Arkansas statute permitting seizure of prisoners' Social Security benefits was in direct conflict with Section 407(a), and there is no "implied exception" that allows attachment of benefits even though state had provided prisoner with care and maintenance); and see *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct 590 (1973) (finding "all inclusive" language of Section 407(a) prohibits state from taking Social Security benefits to care for needy and there is no "implied exception" to the statute.)

50.     The exemptions of benefits from legal process ensures that the beneficiary has <u>uninterrupted</u> use of monies received as benefits.  *Finberg v. Sullivan*, 634 F.2d 50, 63 (3rd Cir. 1980).  (Emphasis added.)  In *Finberg*, the Third Circuit determined that Pennsylvania's post-judgment garnishment procedure was preempted since it permitted a judgment creditor to violate the federal exemption.  The court noted Social Security beneficiaries commonly deposit their benefits in bank accounts, and the Pennsylvania procedure permitted the

attaching and freezing of bank accounts without determining if they contained exempt Social Security funds. Banks are not even allowed to set off charges against a bank account containing only Social Security funds. See *Lopez v. Washington Mutual Bank*, 302 F. 3d 900 (9th Cir. 2002); *Marengo v. First Massachusetts Bank*, 152 F.Supp.2d 92 (D. Mass. 2001); *Hambrick v. First Security Bank*, 336 F.Supp.2d 890 (E.D. Ark. 2004).

51.     If the plain language of a statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. *Dowd v. United Steelworkers Local No. 286*, 253 F.3d 1093, 1099 (8th Cir. 2002); and see *King v. Schafer*, 940 F.2d 1182, 1184 (8th Cir. 1991) (the protections of Section 407(a) must prevail over any conflicting provisions of state law.)   Here, the plain language of section 407(a) prohibits the levy, attachment, or garnishment of Social Security funds and preempts any state statutes permitting such action. In addition, 42 U.S.C. § 1304 further provides:

> The right to alter, amend, or repeal any provision of this [Social Security] Act is reserved to Congress.

Therefore, any provision of Texas law purportedly allowing Defendants to garnish Plaintiff's Social Security Funds in any manner for any amount of time is expressly preempted.

52.     At all relevant times, Defendants could have sought discovery under Texas Rules of Civil Procedure 621a to determine whether there were any Social Security funds in Plaintiff's bank account before garnishing the account, so that the writ could be specifically prepared to exclude from the effect of the garnishment Plaintiff's Social Security funds. Defendants could also have limited the scope of their application for writ of garnishment, and the writ itself, to only non-exempt funds and could have specifically excluded from the garnishment any Social Security benefit funds in Plaintiff's bank account.   However,

Defendants' intent was obviously not to cause Plaintiff the least harm, but rather to cause him the most harm as evidenced by the broad scope of the application for writ of garnishment and Ray Diamond's letter of July 22, 2008. Exhibits 1 and 4.

53. Defendants violated 15 U.S.C. § 1692f(1) and (6) by using an unfair and/or unconscionable means to collect or attempt to collect the debt from Plaintiff. Defendants had no right to freeze, garnish or collect Plaintiff's Social Security funds. A debt collector's act in collecting a debt may be "unfair" if it causes injury to the consumer that is (1) substantial, (2) not outweighed by countervailing benefits to consumers or competition, and (3) not reasonably avoidable by the consumer. *Hage v. General Service Bureau*, 306 F.Supp.2d 883 (D. Neb. 2003); FTC Staff Commentary on § 808, 53 Fed. Reg. 50097, available at 1988 WL 269068 (F.R.) (Fed. Trade Commission 1988). A debt collector may be found liable for violations of state and federal debt collection statutes without regard to the collector's intent to violate the statute or its knowledge of the violation. *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355 (S.D. Fla. 2000) (FDCPA is strict liability statute and knowledge or intend need not be pled); *Irwin v. Mascott*, 94 F.Supp2d 1052 (N.D. Ca. 2000) (FDCPA is a strict liability statute and no showing of intent is necessary to establish liability).

54. In 1991, Plaintiff informed The Cadle Company that he was living on his Social Security funds. See Exhibit 7, Affidavit of Roy H. Bray. Nevertheless, Defendants garnished the account in violation of state and federal law without regard to the harm caused to Plaintiff. Exhibit y. Garnishment is a harsh remedy. There is no competitive justification for the Defendants' conduct. One of the express purposes for enacting the FDCPA was to level the playing field so that debt collectors who comply with the law are not at a

competitive disadvantage with debt collectors who use illegal debt collection tactics. The harm to Plaintiff was not reasonably avoidable by Plaintiff because, despite his best efforts to avoid harm, he ultimately had no control over Defendants' garnishment of his bank account.

55.     Defendants' garnishment of Plaintiff's bank account was an unfair and/or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f(1) and (6).

## F.     LEGAL ANALYSIS OF PLAINTIFF'S RIGHT TO PRIVACY CLAIM

56.     Defendants make the statement on p. 16 of their motion, that "Bray bases his invasion of privacy claim on an erroneous interpretation of the Texas Constitution." Plaintiff's invasion of privacy claim is not solely based upon the Texas Constitution. Bray cites the Texas Constitution only because it is virtually identical to the Colorado, Utah, Pennsylvania and Wisconsin Constitutions, all of which have held that there is an expectation of right to privacy in bank records as a result of this Constitutional provision. Plaintiff's Complaint does not plead a private right of action under Article 1, Section 9 of the Texas Constitution. Plaintiff's cause of action for invasion of his right to privacy is detailed in paragraphs 46 – 50 of his Complaint. Plaintiff's invasion of right to privacy claim is based upon Texas common law, as set forth in these paragraphs of the Complaint. Plaintiff does have an expectation of a right of privacy of in his bank's records of his financial transactions under Texas common law, regardless of the interpretation of the Texas Constitution. Defendants' intruding on Plaintiff's solitude, seclusion, and private affairs is highly offensive to Plaintiff as it would be to any reasonable person. Therefore, since Texas recognizes an intentional or willful invasion of a person's right to privacy as a tort, all of which Plaintiff has pled in his Complaint (see Complaint at ¶ 46-50), Plaintiff invasion of privacy claim

should not be dismissed. See *Billings v. Atkinson*, 489 S.W.2d 858, 859 - 861 (Tex. 1973); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); Restatement (Second) of Torts § 652B (1977).

### G. LEGAL ANALYSIS OF PLAINTIFF'S ABUSE OF PROCESS CLAIM

57. Plaintiff has also stated an abuse of process claim under Texas law. The elements of an abuse of process claim include (1) an illegal, improper, or perverted use of process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Preston Gate, L.P. v. Bukaty,* 248 S.W.3d 892, 897 (Tex.App.-Dallas 2008, no pet.). In order to be an abuse, the process must have been used to accomplish an end which is beyond the purview of the process and compels a party to do collateral things that he could not be compelled to do. *Id.*

58. The crucial aspect of this tort is the improper use of process after it has been issued. *Id.;Bossin v. Towber,* 894 S.W.2d 25, 33 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In other words, the original issuance of process is justified, but the process is later used for an unintended purpose. *Id.* When the process is used for the purpose for which it was intended, even if accomplished through ulterior motive, no abuse of process has occurred. *Id; Baubles & Beads v. Louis Vuitton, S.A.* 766 S.W.2d 377, 379 (Tex.App.-Texarkana 1989, no writ). The "gist" of abuse of process as a tort does not involve commencing an action or causing process to issue without justification. *Blackstock v. Tatum,* 396 S.W.2d 463, 468 (Tex.App.-Houston [1st Dist.] 1965, no writ). Rather, it involves misusing or misapplying process justified in itself for an end other than it was intended to accomplish. *Id.* The purpose for which the process is used is the only thing of importance.*Id.*

If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution. *Montemayor v. Ortiz,* 208 S.W.3d 627, 650 (Tex.App.-Corpus Christi 2006, pet. denied).

59.     Mere procurement or issuance of process with a malicious intent or without probable cause is not actionable; there must be an improper use of the process after its issuance. *Detenbeck v. Koester,* 886 S.W2d 477, 481 (Tex.App.-Houston [1st Dist.] 1994, no writ). Where the only process issued in a case is a citation and no allegations are made with regard to any abuse in the execution of service of that process, there is no cause of action for abuse of process. *Id.*

60.     In the present case, Ray Diamond's letter of July 22, 2008 tells it all.  In his letter responding to Plaintiff's counsel's demand (Exhibit 3) to immediately cause his Social Security funds to be released, Mr. Diamond responded indignantly as follows (Exhibit 4):

> The Cadle Company doubts and denies that the frozen funds are causing Mr. Bray harm and injury. . . .  Although Mr. Bray has provided alleged sworn evidence that the funds are Social Security funds, The Cadle Company absolutely disagrees for reasons that will not be argued in this letter but reserved for argument in front of the Judge.  Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the funds.  The Cadle Company reserves all arguments, rights, remedies and defenses regarding the garnished monies. . . . As a final point, please advise as to how and when your client will begin to pay on this account.

(Emphasis theirs).  Plaintiff provided Defendants with an affidavit and copies of bank statements and deposits for the garnished bank account.  Exhibit 2.  Subsequently, Compass Bank also provided Defendants with this same information.  Despite this evidence that the bank account included Plaintiff's Social Security funds, Defendants refused to cooperate in having the Social Security funds released.  Clearly, Defendants' garnishment of an 87 year

old's bank account in its entirety, without limiting the scope to non-exempt funds, and then refusal to cause Plaintiff's Social Security to be released, constitutes an improper purpose of harming, injuring and harassing Plaintiff, and was done in an effort to strong-arm and extort money (including his Social Security funds) from Plaintiff. This is an improper use of a writ of garnishment and constitutes an abuse of process under Texas law. Plaintiff has properly stated an abuse of process claim, which should not be dismissed.

## H. LEGAL ANALYSIS OF THE ANTI-INJUNCTION ACT AND ABSTENTION DOCTRINE

61. Although asserted by Defendants in their Motion, the Anti-Injunction Act and Abstention Doctrine do not apply to this case. By detailing the different litigation between Plaintiff and The Cadle Company over the past 18 years, Defendants attempt to make it appear that the claims being pursued by Plaintiff in this federal case are the same claims raised and being pursued in Harris County Civil Court at Law No. 1, and that Plaintiff seeks to enjoin actions by that court. This is not the case. First, Plaintiff is not seeking to have the state court proceedings enjoined. Plaintiff is seeking to enjoin the Defendants, not the state court; therefore, the Anti-Injunction Act does not apply. Second, *Colorado River Water Conserv. Dist. v. U.S.*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976), does not support abstention. The pendency of parallel state and federal proceedings is not sufficient to justify a federal court declining to exercise its jurisdiction. *Id.* The "exceptional circumstances" test does not support abstention, because the only proceedings currently pending in County Court at Law No. 1 is a post-judgment motion to dissolve the writ of garnishment, that only asks for Plaintiff's property and accounts to be delivered to Plaintiff. As a post-judgment matter, it would be improper for damage claims to be raised in that proceeding. To pursue in state

court the damage claims being raised in this federal action, Plaintiff would have to file a new lawsuit. This federal litigation is the only proceeding where Plaintiff is seeking damages, injunctive and/or declaratory relief. Further, the jurisdictional limit of County Court at Law No. 1 is $100,000, which is below the damages that Plaintiff is seeking herein, or if he were compelled to file in state court. Finally, Plaintiff suggests that the federal courts are better suited for this type of class action case than state courts.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendants' respective motions to dismiss and motions to abstain. In the event that the Court grant Defendants' motion to dismiss or motion to abstain, in whole or in part, then Plaintiff respectfully requests leave to file a Third Amended Complaint based on the changed circumstances since the Second Amended Complaint was filed (i.e., the June 15th Order by Judge Cagle). In the event that the Court considers Defendants' motions a motion for summary judgment, then Plaintiff would respectfully request additional time for discovery and an opportunity to more fully respond. In the event that the Court deems it appropriate, Plaintiff would further request discovery on the individual defendants' claims of lack of personal jurisdiction. Plaintiff also requests such other and further relief to which the Court deems appropriate.

Dated: July 19, 2010.

Respectfully submitted,

/s/ Thomas R. Bray
**THOMAS R. BRAY**
S.D. Texas No. 17629
Texas Bar No. 02926800

1431 Wirt Road, Suite 140
Houston, Texas 77055
Telephone (713) 827-1760
Telecopier (713) 827-7510

**HILL & HILL**
Attorneys at Law
**J. MARCUS HILL**
S. D. Texas No. 4640
Texas Bar No. 09638150
1770 St. James Place, Suite 115
Houston, Texas  77056
Telephone: (713) 688-6318
Telecopier: (713) 688-2817

**ATTORNEYS FOR PLAINTIFF**

## Certificate of Service

In accordance with the Federal Rules of Civil Procedure I hereby certify that a true and

correct copy of the above and foregoing will be automatically accomplished to the following

Filing User through the Notice of Electronic Filing on this 19th day of July, 2010.

Beverly A. Whitley
Bell Nunnally & Martin LLP
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas 75204-2429
Telephone No.: (214) 740-1400
Telecopy No.: (214) 740-1499

/s/ Thomas R. Bray
Thomas R.  Bray
