UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY H. BRAY, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 4:09-cv-663 |
| THE CADLE COMPANY, DANIEL C. CADLE, AND RAY DIAMOND, | § § § | |
| Defendants. | § § § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Motion to Dismiss and to Abstain (Doc. No. 38) and Motion to Stay (Doc. No. 47) filed by Defendants the Cadle Company ("Cadle"), Daniel C. Cadle ("Mr. Cadle"), and Ray Diamond ("Mr. Diamond") (collectively, "Defendants"). Upon consideration of the parties' filings and the applicable law, the Court concludes that the Motion to Stay and Motion to Abstain should be denied and that the Motion to Dismiss should be granted in part and denied in part.

## I.  BACKGROUND[1]

Plaintiff is an 87-year-old man who resides in Texas. Cadle is in the business of buying alleged debts in default, obtaining judgments, and then pursuing the alleged judgment debtors and their assets to collect on the judgments. (Doc. No. 36, ¶ 10.) Mr. Cadle is the Chief Executive Officer, director, and controlling shareholder of Cadle, and

---

[1] Except as noted, these facts are taken from Plaintiff's Second Amended Complaint (Doc. No. 36) and are assumed to be true for purposes of the Motion to Dismiss. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

is ultimately responsible for the decisions made by Cadle. (*Id.*, ¶ 14.) Mr. Diamond is an account officer and employee of Cadle. (*Id.*, ¶ 15.)

In the late 1980s, Plaintiff borrowed money from Security Bank for personal and household purposes. (*Id.*, ¶ 11.) Cadle bought that loan from the Federal Deposit Insurance Company in Houston, Texas on January 4, 1991, at which time it was already in default. Plaintiff alleges that Mr. Cadle was in Houston at the time and made the decision to purchase the loan. (*Id.*)

In 1993, Cadle obtained a judgment against Plaintiff in Texas state court regarding the defaulted loan. (*Id.*, ¶ 13.) In 2008, Cadle obtained a writ of garnishment in Texas state court against Compass Bank. Pursuant to that writ, Plaintiff's bank account, containing $25,836, was seized. Plaintiff alleges that the bank account contained, in part, Plaintiff's Social Security funds, and that Defendants should have known that based on Plaintiff's informing them or through pre-garnishment discovery. (*Id.* ¶¶ 12, 16-18.) Cadle has not released the funds to Plaintiff. (*Id.* ¶ 20.)

Plaintiff filed this suit in federal court, alleging state law torts as well as violations of several federal and state statutes. Plaintiff seeks a declaratory judgment that the Social Security Act, 42 U.S.C. § 407(a), prohibits Cadle from garnishing Plaintiff's Social Security funds, and that Cadle violated that provision by garnishing Plaintiff's bank account. Plaintiff seeks an injunction under Section 392 of the Texas Finance Code (the Texas Debt Collection Act, or "TDCA") and the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. §§ 17.01-17.926 (Vernon 2002) ("DTPA"), to prevent Defendants from repeating the complained-of conduct in collecting debts and garnishing assets. Plaintiff seeks damages for intrusion on his privacy, abuse of process, and

unreasonable collection efforts under Texas common law. Plaintiff seeks damages for Cadle's improper debt collection activities—failing to obtain a surety bond and claiming Plaintiff's debt was not made for personal purposes—in violation of the TDCA and DPTA. Finally, Plaintiff seeks damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), because Defendants garnished his bank account—an "unfair or unconsionable" debt collection practice—and because Mr. Diamond improperly contacted two individuals about Plaintiff's debt. Defendants have moved to dismiss several of those claims on various grounds. (Doc. No. 38.)[2]

On June 15, 2010, the state court judge in the garnishment action granted Plaintiff's motion for summary judgment, dissolving the writ of garnishment and ordering that Cadle release Plaintiff's garnished funds. (Doc. No. 42-4, at 25, *The Cadle Company v. Roy H. Bray,* No. 579,602-901, In the County Civil Court at Law Number One of Harris County, Texas, Order of June 15, 2010.)) Cadle has appealed that order to the First Court of Appeals of Texas at Houston, and Defendants ask the Court to stay this case pending resolution of the state appeals process. (Doc. Nos. 38, 49.)

Beyond the garnishment action, there have been four other state court lawsuits between Plaintiff and Cadle regarding the loan at issue. These include 1) an action in which Cadle received a judgment on the loan (Doc. No. 12-1, at 4-14); 2) a revival of the original judgment in which Cadle received a judgment on the loan by default (*id.* at 15-16); 3) a collateral attack on the judgment of the revival action, in which Cadle won on

---

[2] Plaintiff also asserts each of these claims on behalf of classes of individuals, including Texas citizens and residents against whom Cadle owns a judgment, has attempted to collect an alleged consumer debt, or has garnished their bank account since March 5, 2007. This Order does not address the validity of any of the claims with regard to the classes.

appeal and the revival judgment remained in place (*id.* at 17-27); and 5)[3] a bill of review

action in which the county court denied Bray's request for an equitable bill of review of

the revival action on the issues of personal and subject matter jurisdiction, and which

Bray has appealed (*id.* at 29-30). This Court has federal question jurisdiction under 28

U.S.C. § 1331 and supplemental jurisdiction over the related state law claims under 28

U.S.C. § 1367.[4]


## II.  ABSTENSION / MOTION TO STAY

Defendants ask the Court to abstain from the case, or issue a stay, due to the

ongoing state proceedings between Cadle and Plaintiff.

### A.    LEGAL STANDARD

Federal courts have a "heavy" and "virtually unflagging obligation . . . to exercise

the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 817, 820 (1976). Under the doctrine of abstention, district courts "may

decline to exercise or postpone the exercise of its jurisdiction . . . only in the exceptional

circumstances where [it] would serve an important countervailing interest." *Id.* at 813

(quoting *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)). Such

countervailing interests fall into "three general categories": 1) "cases presenting a federal

constitutional issue which might be mooted or presented in a different posture by a state

court determination of pertinent state law," *id.* at 814 (quoting *Allegheny County*, 360

U.S. at 189); *see, e.g.*, *Railroad Comm'n of Texas v. Pullman, Co.*, 312 U.S. 496 (1941);

---

[3] For clarity, the Court will adopt the numbering used by the parties, in which the garnishment action is referred to as the "fourth lawsuit."

[4] Because the Court has federal question and supplemental jurisdiction, it need not determine whether the amount in controversy is sufficient to create diversity jurisdiction under 28 U.S.C. § 1332. *See, e.g.*, *Weigle v. AIG Ins. Co.*, 908 F. Supp. 371, 375 n.17 (M.D. La. 1995).

2) cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.* (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); and 3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings," *Id.* at 816 (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

When none of those factors is present, a district court "may abstain from a case that is part of parallel, duplicative litigation typically only under 'exceptional' circumstances." *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 (5th Cir. 2002) (citing *Colorado River*, 424 U.S. at 818); *see also Colorado River*, 424 U.S. at 818 ("Only the clearest of justifications will warrant dismissal."). As the Fifth Circuit has described:

> In making the determination of whether "exceptional circumstances" exist that allow abstention in deference to pending state court proceedings, the Supreme Court has identified six relevant factors: (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Kelly Investment*, 315 F.3d at 497 (internal citation omitted). The decision of whether to abstain "does not rest on a mechanical checklist" of these factors, but rather "on a careful balancing of them as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 497-98 (internal citation omitted).

### B.    ANALYSIS

Defendants argue that abstention is appropriate for two primary reasons. First, Defendants argue that "exceptional circumstances" exist because there are several state court cases relating to the dispute between Plaintiff and Defendants, and allowing this case to proceed would result in unnecessarily duplicative litigation. (Doc. No. 38, at 21-22.) Second, Defendants argue that, because Cadle has appealed the state court order dissolving the writ of garnishment, this Court should not apply that order as *res judicata* to bar the claim that the garnishment was proper as a defense in this case because the preclusive effects of the order could be altered on appeal. (Doc. No. 47, Mot. to Stay.) The Court disagrees with both of Defendants' arguments and finds that abstention is inappropriate.

First, there are no "extraordinary circumstances" present that could justify the Court declining its "heavy" and "virtually unflagging obligation" to exercise its jurisdiction. *See Colorado River*, 424 U.S. at 818, 820. Defendants do not suggest that this case falls within one of the three traditional categories in which important countervailing interests make abstention appropriate. Furthermore, the factors set forth in *Colorado River* and subsequent cases, *see Kelly Investment*, 315 F.3d at 497, do not suggest the existence of any "extraordinary circumstances" that would still make abstention appropriate. The claims in this case were not brought in the state garnishment proceeding, so this Court's exercise of jurisdiction will not result in substantial duplicative litigation.[5] Given that the balance is "heavily weighted in favor of the exercise of jurisdiction," *id.* at 497-98, Defendants have failed to identify any extraordinary circumstances to justify abstention.

---

[5] The fourth state action—the garnishment proceeding—is the only state case for which the Court sees any potential risk of interference from this federal action.

Second, the Court does not find that the fact Cadle has appealed the state court order dissolving the writ of garnishment makes abstention appropriate. The Seventh Circuit addressed this issue in two separate cases. First, in *Rogers v. Desiderio*, the court held that, because Illinois law was unclear on whether an Illinois state judgment that had been appealed enjoyed preclusive effect, and the federal suit would be dismissed "outright on the grounds of claim preclusion" if it did, it was appropriate to stay the federal case pending resolution of the state appeal. 58 F.3d 299, 302 (7th Cir. 1995). The following year, in *Starzenski v. City of Elkhart*, the court held that, because an Indiana state court judgment had "full preclusive effect during the pendency of the appeal," "there was no reason for the district court to stay proceedings pending a final outcome" of the appeals process. 87 F.3d 872, 878 (7th Cir. 1996). Together, *Rogers* and *Starzenski* suggest that whether staying a federal case pending a state court appeal might be appropriate depends on whether it is clear under state law that the original state court order has preclusive effect.

In this case, Defendants acknowledge that the state court order is a final order for purposes of *res judicata*. (*See* Doc. No. 47, Mot. to Stay, at 2.) Under Texas law, "a judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Scurlock Oil Co. v. Smithwick*, 724 S.W. 2d 1, 6 (Tex. 1986); *accord Aguillard v. McGowan*, 207 F.3d 226, 229 (5th Cir. 2000). Therefore, as in *Starzenski*, there is no reason for this Court to stay the case pending the state appeal.

Moreover, even where the preclusive effect of a state judgment is in doubt, abstention is appropriate only if there is "good justification" based on the *Colorado River*

factors. *Rogers*, 58 F.3d at 302. Commentators have noted the undesirability of judgments based on *res judicata* when the underlying claims are subsequently reversed, and suggested that staying the second case may be appropriate. *See* 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4433 (2d ed. 2002). In this case, however, the totality of circumstances do not make a stay appropriate. Preclusion of the garnishment claim, while relevant to this case, is not central to all of the claims. Furthermore, this case is only at the motion to dismiss stage, and today's order is not a final judgment that Defendants would need to move to reopen if the state order were in fact reversed. As discussed above, most of the issues in this case were not at issue in the state garnishment proceeding. Finally, Plaintiff should not have to wait months or years to litigate his claims simply because Cadle has appealed a state court's final order that implicates defenses on some of the claims. Accordingly, the Motion to Abstain and Motion to Stay are denied.

## III. MOTION TO DISMISS

### A.   SUBJECT MATTER JURISDICTION

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

### 1.  Mootness

Cadle moves to dismiss Plaintiff's bond claim on the grounds that Cadle has paid the bond, so the claim is moot and the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### a.      Legal Standard

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," such that "any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations omitted). "Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987); *see also Murray v. Fidelity Nat. Financial, Inc.*, 594 F.3d 419, 423 (5th Cir. 2010) ("If a case is moot, a federal court has no constitutional authority to resolve the issues that it presents.") (citation omitted). However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Such cases are moot only "if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 289 n.10; *see also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The heavy burden of persuading the court that the challenged conduct

cannot reasonably be expected to start up again lies with the party asserting mootness.")
(citation omitted).

### b.       Analysis

The TDCA provides that "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.404(a) (Vernon 2006). It further provides that "[a] person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs," and that "[a] person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter." Tex. Fin. Code Ann. § 392.404(b) and (e) (Vernon 2006).

Plaintiff alleges that Defendants violated § 392.101 of the TDCA by failing to provide a surety bond prior to engaging in debt collection. As a result of that violation, Plaintiff seeks injunctive relief and damages under § 392.404. Defendants argue that, because Cadle eventually provided a surety bond, Plaintiff's claims related to the bond are moot.

Plaintiff acknowledges that Cadle posted a bond on January 11, 2010. (Doc. No. 36, ¶ 36.) However, it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *City of Mesquite*, 455 U.S. at 289 n.10. Accordingly, the claim cannot be dismissed as moot on the basis of Cadle's voluntary cessation of the challenged conduct. *Id.* at 289. Otherwise, the Court "would be compelled to leave the defendant free to return to [its] old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (citation omitted). As

10

the party claiming the case is moot, Cadle bears the "heavy burden" of showing that there is no reasonable possibility that it will engage in debt collection without posting a surety bond. *Laidlaw*, 528 U.S. at 189. Cadle posted the surety bond only after Plaintiff filed this lawsuit, and made no showing that it will not again engage in debt collection against Plaintiff without a bond. The Court declines to speculate as to the likelihood of a resumption of the alleged misconduct, but simply finds that it is not "absolutely clear" that the conduct will not resume.

Neither are the other aspects of Plaintiff's bond claim moot. First, Plaintiff may still seek damages suffered as a result of Defendants' failure to post a bond. Plaintiff has alleged that he suffered actual damages as a result of Defendants' conduct. (Doc. No. 36, ¶¶ 19, 54; *see also* Doc. No. 42, Resp. to Mot. to Dismiss, ¶ 30.) The Court of Appeals of Texas has held that, when a surety bond is eventually paid *and* there is no proof of actual damages, a claim for damages of at least $100 for each violation under § 392.404(e) is moot. *Elston v. Resolution Services, Inc.*, 950 S.W.2d 180, 183-85 (Tex. App. – Austin 1997, no writ). However, in this case, Plaintiff *has* alleged actual damages, so he can successfully maintain an action under § 392.404(a) even though the claim for injunctive relief on the bond issue is moot with respect to Cadle. Although the *Elston* court found that the affidavit describing actual damages was insufficient to show that the damages were a result of the defendant's failure to file a bond, that case was decided at the summary judgment stage. *Id.* at 184-85. Here, Plaintiff has sufficiently alleged that he suffered actual damages as a result of Defendants' failure to file a bond to avoid mootness on that issue.

Second, Plaintiff may pursue injunctive relief against the individual defendants, Mr. Cadle and Mr. Diamond. The TDCA requires "[t]hird-party debt collectors" to post surety bonds prior to engaging in debt collection activities, Tex. Fin. Code Ann. § 392.001 (Vernon 2006). The TDCA expressly incorporates the FDCPA in defining "third-party debt collector." Tex. Fin. Code Ann. § 392.001(7) (Vernon 2006) ("Third-party debt collector means a debt collector, as defined by 15 U.S.C. Section 1692a(6) . . . .") The FDCPA in turn defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). That section specifically excludes ". . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person." *Id.*

The Court of Appeals of Texas has interpreted the FDCPA and TDCA provisions to mean that if an individual "collects or attempts to collect debts owed or due that were in default at the time they were owed to him," that individual is a "third-party debt collector" under the TDCA. *CA Partners v. Spears*, 274 S.W.3d 51, 79 (Tex. App. – Houston 2008, no pet.). The language of 15 U.S.C. 1692a(6)(F)(iii) also makes clear that it excludes only persons collecting debts that were not yet in default when they were acquired by the current owner. In this case, Plaintiff alleges that the debt was already in default when Cadle purchased it. (Doc. No. 36, ¶ 11.) Therefore, Defendants do not fall

within the § 1692a(6)(F) exception, and could qualify as "debt collectors" under the FDCPA.

That does not, however, resolve the question of whether an *employee* is a "third-party debt collector" when the debt is not owed to the employee but instead to the debt collection company for whom the employee works. That issue has not been squarely addressed by the Fifth Circuit or Texas courts, but most federal courts interpreting the FDCPA have found that employees of debt collection companies do fall within the statute's definition of "debt collector." *See, e.g.*, *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435-38 (6th Cir. 2008); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009) (listing cases); *but see Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (holding that employees of debt collection company are not "debt collectors"). The Court agrees that employees of debt collection companies can be "debt collectors" under the FDCPA, and thus "third-party debt collectors" under the TDCA. The language of § 1692a(6) refers to "any person," and includes such people collecting debts either "in a business the principal purpose of which is the collection of any debts" or outside of such a business if the person "regularly collects or attempts to collect" debts.  15 U.S.C. §1692a(6). Thus, the statute contemplates the term "debt collectors" as including people working as part of a debt collection business. *See Robinson*, 654 F. Supp. 2d at 1059 ("[I]t is highly unlikely that Congress wished to restrict liability to the often small corporate vehicle used for collection, and . . . the statutory language clearly brings all those personally involved within the ambit of 'debt collector.'") (citation omitted). This finds support in the Federal Trade Commission's interpretation of "debt collector" in the

FDCPA to include "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another." Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988).[6] At the very least, Plaintiff has alleged sufficient personal involvement by Mr. Cadle and Mr. Diamond to raise a plausible inference that they were sufficiently involved in debt collection activities to constitute "debt collectors" under the FDCPA. *See Kistner*, 518 F.3d at 438 (holding that individual employee was "debt collector" based on his specific involvement in debt collection activities); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1336-37 (D. Utah 1997) (same); *Teng v. Metropolitan Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994) (same); *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 862 (D. Ariz. 1999) (individuals could be "debt collectors" because they "materially participated" in activities "alleged to be collection activities").

Because Plaintiff has adequately alleged that Mr. Cadle and Mr. Diamond are "debt collectors" under the FDCPA and "third-party debt collectors" under the TDCA, they are covered by § 392.101 of the TDCA, which requires third-party debt collectors to obtain surety bonds. Although Cadle has now provided such a bond, the individual defendants have not. Defendants point to no legal authority suggesting that the obligation to provide a surety bond ceases when the third-party debt collector's *employer debt collection company* provides a bond, but the third-party debt collector has not.

---

[6] Contrary to Plaintiff's claim, as well as the suggestion of the district courts in *Weakley v. Redline Recovery Services, LLC*, --- F. Supp. 2d ---, 2010 WL 2787656, at *4 (S.D. Cal. Jul. 13, 2010), and *Robinson*, 654 F. Supp. 2d at 1059, the Staff Commentary on the FDCPA is not entitled to "substantial deference" because it is the interpretation of a statute, not the agency's own regulation. *Cf. Auer v. Robbins*, 519 U.S. 452, 461-62 (1997). Still, the commentary is at the very least "entitled to respect" to the extent that it has the "power to persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Accordingly, the Court finds that Plaintiff's claim for injunctive relief against Mr. Cadle and Mr. Diamond with regard to the bond issue is not moot.[7]

### 2.  Standing

Cadle moves to dismiss Plaintiff's DTPA claim on the grounds that Plaintiff lacks standing, and so the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

### a.    Legal Standard

"[T]he issue of standing is one of subject matter jurisdiction." *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006). In order to have standing by presenting a "case or controversy" under Article III of the U.S. Constitution, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If the Article III standing requirements are met, whether a party has standing to bring a cause of action under a state statute is governed by state law. *See, e.g.*, *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742-43 (5th Cir. 2003) (applying Texas law in standing inquiry); *Westborough Mall, Inc. v. City of Cape Girardeau, Mo.*, 693 F.2d 733, 747-48 (8th Cir. 1982) (applying Missouri law in standing inquiry); 13A Wright, Miller, Cooper, & Freer, Federal Practice and Procedure § 3531.14 (2d ed. 1984 and Supp. 2006) ("Federal courts have stated that state law of standing should be applied as to state rights .

---

[7] Defendants move in the alternative to dismiss the TDCA claims for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). However, they provide no grounds other than mootness why dismissal of these claims would be appropriate, so the Court denies the 12(b)(6) motion as well.

. . , whether the state question arises in an original diversity action, on removal from state court, or as a matter of ancillary jurisdiction.").

### b.      Analysis

Cadle argues that Plaintiff is not a "consumer" and so lacks standing to bring a cause of action under the DTPA. The DTPA defines "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services . . . ." Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon 2007); *see Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 195 (S.D. Tex. 2007) ("To maintain a private cause of action under the DTPA, the plaintiff must be a consumer."). Plaintiff does not appear to argue that, as a borrower, he meets that definition. *See La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984) ("a person who seeks only to borrow money is not a consumer because the lending of money involves neither a good nor a service"). Rather, Plaintiff argues that, as a borrower, he fits the definition of "consumer" under the TDCA, "an individual who has a consumer debt." Tex. Fin. Code Ann. § 392.001(1) (Vernon 2006); *see Cushman v. GC Services, LP*, 657 F. Supp. 2d 834, 841 (S.D. Tex. 2009) ("having 'a consumer debt' is the only prerequisite to 'consumer' status").

The TDCA provides, "A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter." Tex. Fin. Code Ann. § 392.404(a) (2006). Furthermore, Plaintiff points to a clause in the DTPA's subsection entitled "Relief for Consumers," which states:

> Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of

> action described by this subsection only, a reference in this subchapter to
> economic damages means actual damages. In applying Subsection (b)(1)
> to an award of damages under this subsection, the trier of fact is
> authorized to award a total of not more than three times actual damages, in
> accordance with that subsection.

Tex. Bus. & Com. Code Ann. § 17.50(h) (Vernon 2005). Plaintiff argues that those two provisions together mean that the TDCA authorizes a cause of action for a borrower under the DTPA, and even though the DTPA does not expressly authorize such an action, it does expressly authorize actions under the DTPA when they are authorized by any other law. Therefore, Plaintiff contends that he states a claim under the DTPA despite not meeting its definition of "consumer."

Several courts have addressed this precise statutory interpretation question, and all seem to have concluded that "the party bringing a claim under the DTPA for a violation of a tie-in statute must still satisfy the requirement of being a 'consumer.'" *Hansberger v. EMC Mortg. Corp.*, 2009 WL 2264996, at *2 (Tex. App.- San Antonio 2009, review denied); *Cushman*, 657 F. Supp. 2d at 845 ("in all cases, a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA.") (quoting *Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006)); *Eads v. Wolpoff & Abramson, LLP*, 538 F. Supp. 2d 981, 989 (W.D. Tex. 2008) (same); *Burnette v. Wells Fargo Bank, N.A.*, 2010 WL 1026968, at *9 (E.D. Tex. Feb. 16, 2010) ("Texas Business and Commerce Code § 17.50(h) does not exempt claimants from showing that they qualify as a "consumer" under § 17.45(4)."); *In re Eastman*, 419 B.R. 711, 731 (Bankr. W.D. Tex 2009) (same); *B.F. Jackson, Inc. v. CoStar Realty*

*Information, Inc.*, 2009 WL 1812922, at *8 (S.D. Tex. May 20, 2009) (applying DTPA's "consumer" requirement to, among others, DTPA claim for violation of TDCA).[8]

The Court agrees with previous rulings that the TDCA does not erase the DTPA's requirement that only "consumers" have standing. Section 17.50 of the DTPA states:

> (a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
> > (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> > > (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
> > > (B) relied on by a consumer to the consumer's detriment;
> > (2) breach of an express or implied warranty;
> > (3) any unconscionable action or course of action by any person; or
> > (4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon 2005). The TDCA provision that "[a] violation of this chapter is a deceptive trade practice" that "is actionable under" the DTPA does not replace the "consumer" requirement of § 17.50(a), but rather supplements the list of wrongs in (a)(1)-(4) for which *consumers* may maintain an action.[9] Plaintiff's reading would require the Court to interpret the word "actionable" in the TDCA as not simply "furnishing the legal ground for a lawsuit or other legal action," Black's Law Dictionary (8th ed. 2004) (giving as example "actionable tort"), but as furnishing the

---

[8] The Texas Supreme Court has not squarely ruled on this issue. It has, however, held that, where another statute incorporates portions of the DTPA to define violations, but does not incorporate the consumer standing requirement of § 1750(a), consumer status is still required if the terms of the DTPA provision defining the specific violation either "(1) specifically involves a consumer transaction, or (2) involves the misrepresentation of 'goods or services' acquired by the plaintiff." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 385-86 (Tex. 2000).

[9] The TDCA provision could be read either to 1) expand the "specifically enumerated" list of "false, misleading, or deceptive" acts or practices in § 17.46, or 2) constitute a new category, (a)(5), that is by itself sufficient for consumers to maintain an action. Because the Court finds that consumer status is required for standing, it need not reach the issue of which is a better interpretation.

legal grounds for a lawsuit *and also* fulfilling any justiciability requirements. The Court finds such a reading incorrect.

The use of the word "claimant" rather than "consumer" in § 17.50(h) of the DTPA leaves open the possibility that a statute could "grant[] the right to bring a cause of action" under the DTPA to a plaintiff who is not a "consumer." However, § 17.50(h) in no way suggests that *any* grant of a cause of action by another statute would automatically do away with the "consumer" requirement. If the TDCA provision stated ". . . is actionable under that subchapter, regardless of whether the claimant is a 'consumer' under § 17.45(4)," the Court's ruling might well be different. However, based on the language of the two statutes, along with the unanimous authority in this district and other Texas courts, the Court finds that, in order to have standing to raise a DTPA claim based on a violation of the TDCA, the plaintiff must be a "consumer" as defined in the DTPA. Because Plaintiff does not fit that definition of "consumer," he lacks standing, and his DTPA claims are dismissed.

### B.   PERSONAL JURISDICTION

Next, Mr. Cadle and Mr. Diamond move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2).

#### 1.  Legal Standard

"Absent a rule or statute to the contrary, . . . a federal court [may] exercise jurisdiction over only those defendants who are subject to the jurisdiction of courts of the state in which the court sits." *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415, 419 (5th Cir. 1986), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf*

*Wolff & Co.*, 484 U.S. 97 (1987). Because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-17.045, is coterminous with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court's constitutional due process inquiry into personal jurisdiction also serves as an inquiry into personal jurisdiction under the Texas long-arm statute. *Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d. 90, 93-94 (5th Cir. 1992).

To comport with constitutional due process, a plaintiff must show that: (1) Defendants purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that Defendants could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 94 (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir.1990)); *see also Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."). The minimum contacts requirement can be met through contacts sufficient to confer either general or specific jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citation omitted). General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id.* Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation

results from alleged injuries that arise out of or relate to those activities." *Id.* (citation omitted).

While the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists, a *prima facie* showing suffices, and the plaintiffs need not establish jurisdiction by a preponderance of the evidence. *Love N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). Moreover, for purposes of this Order, "the Court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.* (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

### 2. Analysis

Plaintiff has sued Mr. Cadle and Mr. Diamond individually under each of the causes of action in the complaint. He argues that the Court has personal jurisdiction over them because Mr. Cadle, acting as Cadle's Chief Executive Officer and authorized signatory, and Mr. Diamond, acting as the account officer assigned to Plaintiff's account, purposely availed themselves of the privilege of conducting activities in Texas, and engaged in tortious conduct in Texas. Specifically, Plaintiff alleges that Mr. Cadle and Mr. Diamond engaged in debt collection activities that took place in Texas, so they could have reasonably anticipated being haled into court in Texas.

Plaintiff has alleged sufficient facts to support a finding of specific personal jurisdiction over both individual defendants. Plaintiff alleges, among other things:

- "Mr. Cadle either made the decision to garnish Plaintiff's Social Security funds, or ratified or approved the decision by Ray Diamond to garnish Plaintiff's Social Security funds," (Doc. No. 36, ¶ 14);
- "Ray Diamond made and/or executed the decision of Cadle Co., with the approval or ratification of Daniel C. Cadle," and "wrote

in a letter to Plaintiff's attorney that 'Unless the Judge orders the garnishment lifted, The Cadle Company will **NOT** release the funds," (*id.*, ¶ 20);

- "Defendants Daniel C. Cadle and Ray Diamond knew that by initiating the garnishment action (from Ohio or wherever else they might have been), the garnishment and injury to Plaintiff was going to occur in the State of Texas. Here, Mr. Cadle directed his company, The Cadle Company, to garnish Plaintiff's bank account containing Social Security funds in violation of Federal law, and to engage in debt collection in the State of Texas without having a certificate of authority from the Texas Secretary of State to do so, or a debt collector's bond to do so," (*id.*, ¶ 32);

- "Mr. Cadle knew and ratified the unlawful practices of Cadle Co., and/or he developed and implemented Cadle Co.'s unlawful practices made the subject of this Complaint," (*id.*, ¶ 36);

- "Mr. Diamond must have known that his refusal to cause the release of Plaintiff's Social Security funds would injure Plaintiff and cause Mr. Diamond to be haled into this forum," (*id.*, ¶ 37);

- "In early 2009, Ray Diamond contacted Maximo Caballero and his wife, and told them that he was with The Cadle Company, a collection agency, and that he was gathering information about Plaintiff," (*id.*, ¶ 38).

Defendants controvert by affidavit only the allegation that, "On information and belief, Daniel C. Cadle was in Houston when the bid and purchase was made, and made the decision to purchase Plaintiff's loan." (*See* Doc. No. 38-1, at 3 (citing Doc. No. 36, ¶ 11.))

Based on the uncontroverted allegations, the Court finds (1) that Mr. Cadle and Mr. Diamond purposefully availed themselves of the benefits and protections of Texas law, thereby establishing "minimum contacts" with Texas such that they could reasonably have anticipated being haled into court there; and (2) under the circumstances, the exercise of personal jurisdiction against them "does not offend traditional notions of fair play and substantial justice." *Command-Aire Corp.*, 963 F.3d. at 93-94. As the Fifth Circuit has explained:

> When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses. Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct.

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999) (internal citations omitted). Here, Plaintiff has alleged with sufficient detail that Mr. Cadle and Mr. Diamond took actions outside of Texas that were highly likely to result in serious harm within the state. The alleged acts were aimed at no other state but Texas, and were aimed at Plaintiff specifically. Plaintiff alleges that serious harm resulted from that conduct. Plaintiff has thus made a *prima facie* showing of personal jurisdiction, *Love N' Care, Ltd.*, 438 F.3d at 469, and Defendants have not provided affidavit to sufficiently rebut that showing.[10]

Finally, exercising personal jurisdiction over Mr. Cadle and Mr. Diamond would not "offend traditional notions of fair play and substantial justice" based on "the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113 (citations omitted). The burden on

---

[10] The "fiduciary shield doctrine, which protects a corporate officer or employee from the trial court's exercise of general personal jurisdiction when all of the individual's contacts with Texas were on behalf of his employer," *Wright v. Sage Engineering, Inc.*, 137 S.W.3d 238, 250 (Tex. App. – Houston 2004, pet. denied), does not apply to *specific* jurisdiction inquiries. *Barnhill v. Automated Shrimp Corp.*, 222 S.W. 3d 756, 768 (Tex. App. – Waco 2007, no pet.) Furthermore, Plaintiff alleges that Mr. Cadle and Mr. Diamond are *individually* liable, and "[c]orporate officers are not shielded from the exercise of specific jurisdiction for fraudulent or tortuous acts for which they may be liable." *Id.* (citation omitted).

Mr. Cadle and Mr. Diamond, though not insignificant, has not been shown to be particularly burdensome. All of the other factors mentioned in *Asahi* suggest that the exercise of personal jurisdiction in Texas is fair and just. The alleged misconduct took place in Texas, and several claims are based on application of Texas law; Plaintiff may not have recourse to seek relief in any other forum; and there has been no suggestion that it would be more efficient to resolve the claims in another state or that any other state has an interest in resolving the claims. Therefore, the Court may constitutionally exercise personal jurisdiction over Mr. Cadle and Mr. Diamond.

### C.    FAILURE TO STATE A CLAIM

Defendants move to dismiss several of Plaintiff's claims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

#### 1.   Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum &*

*Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)

(citation omitted).

### 2.    Fair Debt Collection Practices Act

One of the stated purposes of the FDCPA is "to eliminate abusive debt collection

practices by debt collectors." 15 U.S.C. § 1692. To help further that goal, the statute

provides:

> A debt collector may not use unfair or unconscionable means to collect or
> attempt to collect any debt. Without limiting the general application of the
> foregoing, the following conduct is a violation of this section:
> (1) The collection of any amount (including any interest, fee, charge, or
> expense incidental to the principal obligation) unless such amount is
> expressly authorized by the agreement creating the debt or permitted by
> law . . .
> (6) Taking or threatening to take any nonjudicial action to effect
> dispossession or disablement of property if—
> (A) there is no present right to possession of the property claimed as
> collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(1) and (6). Plaintiff alleges that Defendants' garnishment of Plaintiff's

bank account violated the FDCPA as an "unfair or unconscionable means" of debt

collection in violation of that provision. (Doc. No. 36, ¶¶ 57, 60.) Defendants move to

dismiss that claim on the grounds that the FDCPA does not prohibit an ordinary state

court garnishment.

The state court orders dissolving the garnishment and granting Plaintiff's motions

for summary judgment bar Defendants from relitigating the claim that the garnishment of

Plaintiff's bank account was proper. (*See* 42-4, 1-25 (state court motions and order).)  28

U.S.C. § 1738 provides that state judicial proceedings "shall have the same full faith and

credit in every court within the United States and its Territories and Possessions as they

have by law or usage in the courts of such State." Under Texas law, "[r]es judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). As discussed above, Defendants do not seem to dispute that these orders constitute final orders for purposes of claim preclusion. (*See* Doc. No. 47, Mot. to Stay, at 2.)  Because Cadle's claim was denied by the state court in a final order, it may not now argue that the garnishment was proper and lawful.

The Court finds that Plaintiff has stated a claim under the FDCPA by alleging that 1) his bank account was exempt by law from garnishment by the Social Security Act; and 2) Defendants garnished the bank account, despite knowing or having reason to know that it contained Social Security funds and despite having failed to conduct pre-garnishment discovery. These allegations plausibly support a claim that Defendants engaged in an "unfair or unconscionable means to collect" the debt. In *Hogue v. Palisades Collection, LLC*, the district court found that the plaintiff stated a claim under § 1692f of the FDCPA where he alleged that the defendants garnished his bank account containing Social Security funds even though he had provided a sworn affidavit stating that his bank account contained only Social Security funds, and where Iowa law provided for a pre-garnishment debtor's examination to determine the exempt status of funds. 494 F. Supp. 2d 1043, 1047-51 (S.D. Iowa 2007); *see also Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903, 915 (S.D. Ohio 2004) (holding that plaintiff stated a claim under § 1692f because defendants had no reason to believe plaintiff's bank account contained non-exempt funds, and Ohio law permitted pre-garnishment debtor's

examination). Similarly, in this case, Plaintiff alleges that he informed Defendants by letter in 1991, and subsequently by sworn affidavit, that his bank account contained Social Security funds. Texas law similarly provides for pre-garnishment discovery. *See* Tex. R. Civ. P. 621a. Although Plaintiff acknowledges that only some of the funds in his bank account are Social Security funds, the exempt funds are nonetheless protected from "attachment, levy and garnishment even if they are commingled with funds from other sources." *S & S Diversified Services, L.L.C. v. Taylor*, 897 F. Supp. 549, 552 (D. Wyo. 1995); *United States v. Wilson*, 2008 WL 2510183, at *3 (E.D. Mich. June 23, 2008) (same); *Neilson v. McGuire*, 2006 WL 1875383, at *3 (D. Neb. July 5, 2006) (same); *see also Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415-16 (1973) (refusing to read "implied exemption" into "all-inclusive" language of 42 U.S.C. § 407).

The Court acknowledges Defendants' concern of a slippery slope if all accounts containing any non-exempt funds receive protection from garnishment. (*See* Doc. No. 46, at 8 ("Taken to its logical extreme, Bray's argument begs the question whether a wealthy debtor could shield an account holding millions of dollars from garnishment by simply commingling a paltry amount of social security funds in the same account.") However, Defendants cite no law addressing that concern. Moreover, the Court finds troubling the opposite potential problem: that, as Plaintiff alleges, a debt collector might intentionally garnish the bank account of an elderly debtor who is "living on Social Security funds," (Doc. No. 36, ¶ 12), despite knowing that the account contains Social Security funds upon which the debtor is dependent and which are protected from garnishment by the "all-inclusive" language of the Social Security Act. *Philpott*, 409 U.S. at 415. The Court need not decide the precise delineation the law draws between those opposing concerns at

this stage. It holds only that Plaintiff has made sufficient allegations to plausibly claim that Defendants' garnishment—which has been dissolved by the state court—constituted an unfair or unconscionable means of debt collection. *See Hogue*, 494 F. Supp. 2d at 1047-51.

### 3.      Invasion of Privacy

Plaintiff alleges that Defendants violated his "right to privacy in his bank records of his financial transactions" by "using the services of bank account search firms, which surreptitiously obtained such bank account information from sources," by "hir[ing] private investigators or other persons to surveil, harass, and stalk Plaintiff at and near his home," and by garnishing his bank account. (Doc. No. 36, ¶¶ 28, 48-49.). In separate portions of the Second Amended Complaint, Plaintiff states that 1) although Texas courts have not yet ruled on the issue, this right to privacy is protected by Article 1, Section 9 of the Texas Constitution, and 2) "intentional or willful invasion of a person's right to privacy" is recognized as a tort in Texas. (*Id.*, ¶¶ 26-27, 48.) In his Response to the Motion to Dismiss, Plaintiff clarifies that he "does not plead a private right of action under Article 1, Section 9 of the Texas Constitution" but rather bases his claim on Texas common law. (Doc. No. 42, ¶ 56.) Defendants argue that Plaintiff cannot state a common law invasion of privacy claim because he did not allege a "physical invasion of his property," a "physical intrusion," or "eavesdropping." (Doc. No. 38, at 18; Doc. No. 46, at 9.)

Texas courts recognize "a cause of action for a willful, unwarranted invasion of privacy" based on the Restatement (Second) of Torts § 652B (1977). *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (citing *Billings v. Atkinson*, 489 S.W.2d 858

(Tex. 1973)). "[T]here are two elements to this cause of action: (1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person." *Id.* Thus, there need not be a *physical* intrusion to state a claim for intrusion on seclusion under Texas law. However, Texas courts have held that "[i]ntrusion upon seclusion is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Texas Comptroller of Public Accounts v. Attorney General of Texas*, 244 S.W.3d 629, 636 (Tex. App. – Austin 2008, pet. granted); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997) (same). The court in *Texas Comptroller* noted the lack of authority for intrusions without either physical intrusion *or* eavesdropping. 244 S.W.3d at 636. However, there is authority to the effect that examining a person's bank records can constitute an "intrusion" for purposes of this tort. Restatement (Second) of Torts § 652B, Comment (1977) ("The invasion . . . may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account . . . .").

Plaintiff has alleged, among other things, that Defendants intruded on his privacy by hiring people to obtain his bank account information and to surveil Plaintiff. Those assertions plausibly allege that Defendants intentionally intruded upon his seclusion by eavesdropping. *See Iqbal*, 129 S.Ct. at 1949. Therefore, Plaintiff has stated a claim for invasion of privacy under Texas common law.

### 4.    Abuse of Process

Plaintiff alleges that Defendants committed the tort of abuse of process when they garnished his bank account. Specifically, he alleges that "[Defendants] had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the writ of garnishment, and damage resulted to Plaintiff as a direct and proximate result of the irregular act," and that "Cadle used the writ of garnishment to seize Plaintiff's Social Security funds in an attempt to force/extort payment from Plaintiff out of those funds." (Doc. No. 36, ¶ 49.)

"A claim for abuse of process requires (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act." *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App. – Austin 2008, pet. denied) (citation omitted). The "process" at issue can include garnishment. *Lozano v. Tex-Paint, Inc.*, 606 S.W.2d 40, 43 (Tex. App. – Tyler 1980, no writ). "To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do." *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App. – Dallas 2008, no pet.) "When the process is used for the purpose for which it was intended, even though accomplished by an ulterior motive, no abuse of process has occurred." *Id.*

Even when taking the allegations in the Second Amended Complaint to be true, Plaintiff does not state a claim for abuse of process. Plaintiff's main theory in support of the abuse of process claim is that Defendants obtained a writ of garnishment and subsequently refused to release the account in order to extort money (including Social Security funds) to Plaintiff. "Garnishment is a statutory proceeding brought by a

31

judgment creditor (the garnishor) whereby the property, money, or credits of the judgment debtor (the debtor) in the possession of another (the garnishee) may be applied to payment of the final judgment against the debtor." *Zeecon Wireless Internet, LLC v. American Bank of Texas, N.A.*, 305 S.W.3d 813, 816 (Tex. App. – Austin 2010, no pet.); *see also Roy Campbell & Co. v. Roots*, 60 S.W.2d 896, 897 (Tex. App. – Amarillo 1933, writ dismissed) ("In a garnishment proceeding, the purpose of the writ is to cite the garnishee to appear at the time designated and to answer the inquiries upon oath, and also to impound the assets or property of a debtor in the hands of the garnishee."). Thus, obtaining the money in Plaintiff's bank account is the intended purpose of garnishing Plaintiff's bank account. Accordingly, if Defendants filed for a writ of garnishment, and refused to end it, in order to obtain the funds in Plaintiff's account, that would not constitute an abuse of process. *See Preston Gate*, 248 S.W.3d at 897 ("When the process is used for the purpose for which it was intended, even though accomplished by an ulterior motive, no abuse of process has occurred."). Attempting to use the garnishment to obtain from Plaintiff the very funds that were the subject of the garnishment is akin to using any lawsuit to seek a settlement for the remedies sought in that lawsuit, and does not constitute an "improper use of the process." *See Detenbeck v. Koester*, 886 S.W.2d 477, 481 (Tex. App. – Houston 1994, writ denied) ("The purpose every lawsuit is to obtain either a settlement or a judgment. Therefore, an attempt to use a citation, and the resulting lawsuit, to coerce a settlement, is not an attempt to obtain a collateral advantage, but merely an attempt to carry out the process to its natural conclusion.").

Plaintiff's contention that Defendants knew or had reason to know that Plaintiff's bank account contained Social Security funds does not make it an abuse of process.

"The critical aspect of this tort is the improper use of the process *after* it has been issued." *Preston Gate*, 248 S.W.3d at 897 (emphasis added). Plaintiff's argument amounts to an attack on the issuance of the process itself—which cannot constitute an abuse of process—by challenging the fact that Defendants *continued* to take the position that the bank account could properly be garnished. Based on the facts as alleged here, continuing to assert the original grounds for garnishment in refusing to return the garnished funds does not constitute an abuse of process. *See Blackstock v. Tatum*, 396 S.W.2d 463, 468 (Tex. App. - Houston 1965, no writ) ("there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions").

### 5.      Unreasonable Collection Efforts

Plaintiff alleges that Defendants engaged in unreasonable collection practices by "garnishing Plaintiff's bank account," by "hiring private investigators or other persons to surveil, harass, and stalk Plaintiff at and near his home," and for "deceiv[ing] Compass Bank into producing Bray's bank account records." Elsewhere in the complaint, Plaintiff alleges that, despite knowing that his bank account contained Social Security funds, Defendants garnished the account, and that it caused him mental anguish and a disruption in his eating, sleeping, social interaction, and other activities. (Doc. No. 36, ¶¶ 19-20.) Defendants move to dismiss this claim for failure to state a claim upon which relief may be granted, and Plaintiff did not address this claim in his response.

Texas common law recognizes the intentional tort of unreasonable collection efforts. *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. – Dallas 2008, no pet.). "[T]he elements are not clearly defined and the conduct deemed to constitute an

unreasonable effort varies from case to case." *Id.* Generally speaking, however, "[u]nreasonable collection efforts are defined as efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Woodrum v. Bradley*, 1990 WL 151264, at *4 (Tex. App. – Houston Oct. 11, 1990, writ denied). For example, in *Pullins v. Credit Exchange of Dallas, Inc.*, a series of harassing phone calls after the plaintiff had informed the defendants that he had paid his debt were found to be "unreasonable." 538 S.W.2d 681, 683 (Tex. App. – Waco 1976, no writ); *see also Connell v. Rosales*, 419 S.W.2d 673, 676-77 (Tex. App. – Texarkana 1967, no writ) (repeated calls, including to plaintiff's supervisor at work, were "unreasonable"). A plaintiff in this district stated a claim for unreasonable collection efforts by alleging that the defendants sent him a letter and called him twice even though he contended he owed no debt. *B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, 2009 WL 1812922, at *5-6 (S.D. Tex. May 20, 2009).

Plaintiff cites *Moore v. Savage*, 359 S.W.2d 95 (Tex. App. – Waco 1962) writ refused n.r.e., 362 S.W.2d 298 (Tex. 1962) (*per curium*), for the proposition that a showing of negligence is sufficient to state a claim for unreasonable collection. However, subsequent case law has consistently required intent rather than negligence. *See EMC Mortgage*, 252 S.W.3d at 868; *B.F. Jackson*, 2009 WL 1812922, at *5 (listing cases). Plaintiff does allege, in the alternative, that Defendants acted "out of malice or with reckless disregard for the rights of Plaintiff." (Doc. No. 36, ¶ 66.)

Plaintiff has failed to allege a course of harassment that was willful, wanton, and malicious. The Court has found no case in which garnishment, even if intentionally improper, constituted an unreasonable collection effort. Plaintiff does not give any

indication that the alleged harassment by private investigators occurred on many instances or over a prolonged period of time. Even in *B.F. Jackson*, in which just three instances of harassment were sufficient to state a claim, the Court found important that the plaintiff contended that no debt was owed, and noted that it was "thin evidence on which to base a claim that Defendants engaged in a willful, wanton, and malicious course of harassment." 2009 WL 1812922, at *6 n.33.   Thus, the allegations do not claim the type of repeated harassment that has been required for this tort.

Neither does Plaintiff allege that Defendants intended to inflict mental anguish and bodily harm with their actions. Even Plaintiff's "in the alternative" claim that the actions were taken with malice fails to allege that Defendants' intention was to inflict that type of harm on Plaintiff.

Therefore, Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is granted on the claim for unreasonable collection efforts.

### 6.    Anti-Injunction Act

### a.    Injunctive Relief

Defendants argue that the Court is barred from granting Plaintiff's claims for injunctive relief by the Anti-Injunction Act and that therefore the claims should be dismissed for failure to state a claim upon which relief may be granted. The Anti-Injunction Act provides, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Plaintiff's remaining injunctive relief claims under the TDCA seek to enjoin Defendants from engaging in debt collection activity without a surety bond and from

claiming that Plaintiff's debt was not made for personal purposes. (*See* Doc. No. 36, ¶ 52.)

The Court finds that the requested injunction under the TDCA would not stay or enjoin any proceedings in a state court. Although the Anti-Injunction Act prohibits injunctions that prevent private parties from "utiliz[ing] the results of a completed state proceeding," *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970), that is not the case here. The requested relief would merely enjoin Defendants from engaging in debt collection activity without a surety bond and from claiming that Plaintiff's debt was not made for personal purposes. Therefore, the claim for injunctive relief under the TDCA does not fall within the language of the Anti-Injunction Act, and is not barred by that statute.

### b.      Declaratory Relief

Defendants also move to dismiss, based on the Anti-Injunction Act, Plaintiff's claim for a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 "that Section 407(a) of the Social Security Act prohibits [Defendants] from garnishing the Social Security funds of Plaintiff, and that [Defendants] violated Section 407(a) by garnishing Plaintiff's Social Security funds held in Plaintiff's Compass Bank account." (*Id.*, ¶ 43.) Defendants are correct that the Anti-Injunction Act can bar declaratory relief that effectively enjoins pending state proceedings. *See Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) (en banc). However, "[t]he Anti-Injunction Act applies only to *pending* state court actions." *B & A Pipeline Co. v. Dorney*, 904 F.2d 996, 1001 n.15 (5th Cir. 1990) (emphasis added). After Defendants filed their Motion to Dismiss, the state court dissolved the garnishment, so there is no pending state proceeding with which the

requested declaration could potentially interfere. Defendants do not mention the Anti-Injunction Act issue with regard to declaratory relief in their Reply, which was filed after the garnishment was dissolved. The Court sees no reason why the Anti-Injunction Act would bar the declaratory relief Plaintiff seeks, and Defendants provide none.

### 7.  Pendent State Claims

Finally, Defendants request that the Court decline to exercise supplemental jurisdiction over the state law claims because they "substantially predominate" over the federal question claims. *See* 28 U.S.C. § 1367(c). The Court does not find that the state law claims substantially predominate over the federal claims, and so does not decline to exercise its jurisdiction over the state law claims.

## IV. CONCLUSION

Defendants' Motion to Abstain and Motion to Stay are **DENIED.** Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's Deceptive Trade Practices Act claim and abuse of process and unreasonable collection efforts tort claims. Defendants' Motion to Dismiss is **DENIED** with respect to all other claims. Defendants' alternative Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d) is **DENIED** without prejudice to refiling.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 12th day of October, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE